Argued and submitted May 11, 1999, decision of Court of Appeals and judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings July 27, 2000

Gary FULMER
and Lottie Ann Fulmer,
husband and wife,
*Petitioners on Review,*

*v.*

TIMBER INN RESTAURANT AND LOUNGE, INC.,
an Oregon corporation;
Gordon Joelson, and M. Elaine Joelson,
*Respondents on Review.*

(CC 94 CV 1184; CA A88358; SC S45323)

9 P3d 710

414

Maureen Leonard, Portland, argued the cause for. petitioners on review. With her on the briefs was Lawrence Baron.

Ronald B. Terzenbach, of Loomis & Holland, Eugene, argued the cause for respondents on review. With him on the briefs was Daniel M. Holland.

Kevin N. Keaney, of Willner Keaney Mata & U'Ren, LLP, Portland, and Meagan A. Flynn, of Pozzi Wilson Atchison, LLP, Portland, filed briefs for *amicus curiae* Oregon Trial Lawyers Association.

Thomas W. Brown, of Cosgrave, Vergeer & Kester, LLP, Portland, filed a brief for *amicus curiae* Oregon Association of Defense Counsel.

KULONGOSKI, J.

## KULONGOSKI, J.

This is a civil proceeding in which plaintiffs seek recovery from defendants for injuries that plaintiff[1] sustained in a fall on defendants' premises after defendants allegedly served alcohol to plaintiff while plaintiff was visibly intoxicated. Plaintiffs' second amended complaint (hereinafter complaint) alleged eight claims for relief, including negligence *per se*, common-law negligence, premises liability, and loss of consortium. The trial court dismissed the complaint for failure to state a claim. ORCP 21 A(8). Plaintiffs appealed, and the Court of Appeals affirmed. *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 152 Or App 334, 954 P2d 201 (1998). We allowed plaintiffs' petition for review. We hold that plaintiffs' complaint stated ultimate facts sufficient to constitute claims for common-law negligence, premises liability, and loss of consortium. Accordingly, we affirm in part and reverse in part.

In reviewing a dismissal for failure to state a claim under ORCP 21 A(8), we accept as true all well-pleaded allegations of fact and all reasonable inferences that may be drawn from them. *Scovill v. City of Astoria*, 324 Or 159, 164, 921 P2d 1312 (1996). We examine those facts to determine only whether plaintiffs have alleged facts sufficient to constitute a claim. *Id.*

Plaintiffs' complaint alleged the following: In February 1993, plaintiffs went to the Timber Inn for a social evening with their family. Defendant Timber Inn Restaurant and Lounge, Inc., owns and operates that establishment. Gordon A. and M. Elaine Joelson, the owners, operators, and officers of that corporation, also were named as defendants.[2] The Timber Inn is a two-story restaurant and lounge. The only means of access to the lounge, located on the second level, is by way of stairs.

---

[1] Except when noted, all references to "plaintiff" are to Gary Fulmer. All references to "plaintiffs" are to Gary and Lottie Ann Fulmer.

[2] All references to defendants are to the corporation and to the Joelsons, collectively.

During the evening, defendants served a substantial quantity of alcohol to plaintiff. At some point, plaintiff became visibly intoxicated, but defendants continued to serve him alcohol, causing him "to become poisoned with alcohol, [and] to lose his sense of reason and volition * * *." Ultimately, plaintiff lost consciousness and fell down the stairs, sustaining serious injuries.

Plaintiffs' first seven claims sought an award of damages for the injuries that plaintiff suffered. The eighth claim sought damages on behalf of Lottie Ann Fulmer for loss of consortium. We begin with plaintiffs' first three claims, each of which alleged negligence *per se*.

■      Plaintiffs alleged that, by continuing to serve alcohol to plaintiff after he was visibly intoxicated, defendants violated ORS 471.410(1),[3] ORS 471.412(1),[4] and *former* ORS 472.310(3) (1993).[5] All three statutes prohibit serving alcohol to persons who are visibly intoxicated. Plaintiffs alleged that defendants' violation of those statutes was negligence *per se*, *i.e.*, that defendants negligently failed to exercise the level of care allegedly specified in those statutes.

This court has held that ORS 471.410(1) does not create a standard of care the violation of which would constitute negligence *per se. See Stachniewicz v. Mar-Cam Corporation*, 259 Or 583, 586-87, 488 P2d 436 (1971), *overruled in part on other grounds by Davis v. Billy's Con-Teena, Inc.*, 284

---

[3] ORS 471.410(1) provides:

"No person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated."

[4] ORS 471.412(1) provides:

"No licensee or permittee shall knowingly allow a person to consume or to continue to consume alcoholic beverages on the licensed premises after observing that the person is visibly intoxicated."

[5] *Former* ORS 472.310 (1993) provided, in part:

"It shall be unlawful:

"* * * * *

"(3)  For any person to serve, sell or dispense alcoholic liquor to any person * * * who is visibly intoxicated. However, nothing in this subsection prohibits any licensee from allowing a person who is visibly intoxicated from remaining on the licensed premises so long as the person is not sold or served any alcoholic liquor."

The legislature repealed ORS 472.310 in 1995. Or Laws 1995, ch 301, § 74.

Or 351, 356 n 4, 587 P2d 75 (1978) ("visible intoxication" standard under *former* ORS 471.410(3) (1975), *renumbered and amended as* ORS 471.410(1) (1977), is inappropriate in negligence *per se* context); *Hawkins v. Conklin*, 307 Or 262, 265, 768 P2d 66 (1988) (same).

Plaintiffs acknowledge that the court held in *Stachniewicz* that ORS 471.410(1) does not afford a basis for a claim of negligence *per se* and further acknowledge that ORS 471.412(1) and *former* ORS 472.310(3) (1993) are identical to ORS 471.410(1) in all respects relevant to this case. Plaintiffs contend, however, that the holding in *Stachniewicz* was incorrect and should be overruled. Plaintiffs also assert that the court should not extend that holding to the interpretation of ORS 471.412(1) and *former* ORS 472.310(3) (1993).

In *Hawkins*, the Court of Appeals had determined, contrary to *Stachniewicz*, that the plaintiff had stated a negligence *per se* claim on the basis of ORS 471.410(1). *Hawkins v. Conklin*, 87 Or App 392, 395, 742 P2d 672 (1987). This court reversed, stating:

> "This court has held that ORS 471.410(1) is not an appropriate standard for establishing negligence *per se*. *Stachniewicz v. Mar-Cam Corporation*, 259 Or 583, 586-87, 488 P2d 436 (1971), *overruled in part on other grounds*; *Davis v. Billy's Con-Teena, Inc.*, 284 Or 351, 356 n 4, 587 P2d 75 (1978). Whether or not we would so hold if the effect of ORS 471.410(1) were before us for the first time today, we follow our practice of giving a prior interpretation of a statute the effect of *stare decisis*. We reverse the Court of Appeals' holding that the plaintiff stated a claim of negligence *per se* based on ORS 471.410."

*Hawkins*, 307 Or at 265.

At this point, plaintiffs' argument would require the court not only to reverse the statutory construction adopted in *Stachniewicz*, but also to abandon the decision in *Hawkins* to accord the effect of *stare decisis* to the holding in *Stachniewicz*. Plaintiffs submit nothing that would justify those actions. Under the circumstances, we follow *Hawkins*. Thus, in construing ORS 471.412(1) and *former* ORS 472.310(3) (1993), we accord *stare decisis* effect to this court's construction in *Stachniewicz* of the materially identical wording of

ORS 471.410(1). Because none of those statutes affords a basis for a claim of negligence *per se*, the trial court did not err in dismissing plaintiffs' first three claims for relief.

Plaintiffs do not seek review of the dismissal of their fourth claim for relief, which alleged negligence *per se* based on violations of ORS 471.425(2) and *former* 472.310(6) (1993). Therefore, we proceed to consider plaintiffs' fifth claim for relief, based on common-law negligence.

Plaintiffs' fifth claim for relief alleged that defendants were liable, under a common-law negligence theory, for "causing plaintiff * * * to become poisoned with alcohol, to lose his sense of reason and volition; and * * * knowing plaintiff * * * was in such condition and visibly intoxicated, continu[ing] to ply plaintiff * * * with alcohol * * *." At issue is whether a common-law negligence claim exists in favor of an intoxicated person who suffered injury on the premises of an establishment against the server or establishment that supplied alcohol to the injured person when the person was visibly intoxicated. Defendants assert that Oregon does not recognize such a common-law claim in favor of a person who suffers injury resulting from his or her own consumption of alcohol, citing *Miller v. City of Portland*, 288 Or 271, 279, 604 P2d 1261 (1980), and *Sager v. McClenden*, 296 Or 33, 35, 672 P2d 697 (1983). Plaintiffs respond that defendants' assertion is incorrect, citing *Ibach v. Jackson*, 148 Or 92, 102-03, 35 P2d 672 (1934). As we explain below, plaintiffs are correct.

In Oregon, criminal penalties for the sale of alcohol to intoxicated persons first were enacted in 1876. *See* Annotated Laws of Oregon, v I, ch VIII, title II, § 1914, p 965 (Hill 1887) ("It shall be unlawful for any person to knowingly sell * * * any spirituous or other intoxicating liquors * * * to any intoxicated person, or to any person who is in the habit of becoming intoxicated[.]"). Legislation passed in 1913, known as the Dram Shop Act, created limited statutory civil liability for the same acts. General Laws of Oregon, ch 51, § 1, pp 82-83 (1913); *see, e.g., Gattman v. Favro*, 306 Or 11, 16-17, 757 P2d 402 (1988) (discussing origins of statutory tort liability for service of alcohol). Before 1934, neither an intoxicated first party nor a third party injured as a result of an intoxicated person's actions could bring a claim for common-law

negligence against an alcohol provider. *Hawkins*, 307 Or at 266. In 1934, however, this court in *Ibach* departed from the historical rule disallowing common-law claims against alcohol providers and recognized for the first time a common-law claim in favor of an intoxicated person on the theory that the defendant negligently had furnished the person alcohol. *Ibach*, 148 Or at 102-03.

*Ibach* was a wrongful death action premised on an allegation that the defendant's negligent acts had caused the death of Genevieve Callahan (Callahan). The plaintiff, administratrix of Callahan's estate, filed a complaint alleging that the defendant "wrongfully and unlawfully gave and served * * * Callahan large quantities of intoxicating alcoholic liquors for beverage purposes, and induced her * * * to drink the same in large quantities * * *," thereby causing her to become ill and die. *Id.* at 94-95.

Subsequently, the plaintiff filed an amended complaint that repeated the allegations contained in the original complaint and further alleged that the defendant had "wrongfully forced" Callahan to consume alcoholic liquors "to such an extent that she lost her sense of reason and volition * * *" and that the defendant had left Callahan alone in a hotel room after she had become ill and had injured herself. *Id.* at 96-97. The defendant filed a motion to strike the amended complaint, which the trial court granted. The trial court then entered judgment in favor of the defendant and dismissed the case.

On the plaintiff's appeal, this court held, among other things, that the trial court had erred in sustaining the defendant's motion to strike the amended complaint. *Id.* at 100. The court reasoned:

> "[I]t is wrongful for any person repeatedly and continuously to ply another person with intoxicating liquor until intoxication is produced. * * * It is alleged in the amended complaint, as it may be inferred from the original complaint, that after [Callahan] lost her sense of reason and volition, defendant continued to administer liquor to her. *If [Callahan] had survived such an indignity, she would have had a right of action against defendant for such damages as she sustained thereby.*"

*Id.* at 102-03 (emphasis added).

Thus, in *Ibach*, this court recognized the claim that plaintiffs bring in this case, namely, a common-law claim in favor of an intoxicated person on the theory that the defendant negligently had served alcohol to the person. Defendants' argument that there is no prior case law holding that a common-law negligence claim exists in favor of an intoxicated person under such circumstances is incorrect.

Defendants assert, in the alternative, that *Ibach* is inapplicable to this case, because in *Ibach* Callahan allegedly was "forced" to consume alcohol, whereas plaintiff in this case "voluntarily" participated in his alcohol consumption. That distinction does not provide support for defendants' position. In *Ibach*, on the defendant's petition for rehearing, this court clarified that the allegation in the amended complaint concerning the use of force by the defendant in that case was immaterial:

> "Whether constructive force or actual force, or no force at all was employed, the violation of duty is shown by the facts alleged[.]"

*Id.* at 111. Similarly, the lack of forcible conduct on defendants' part in this case does not determine whether plaintiff has alleged facts sufficient to state a claim for negligence.

Defendants also contend, based on their reading of several cases later from this court, that it would be "inconsistent with legislative policy" to "create" a liquor liability claim based on a theory of common-law negligence in favor of an intoxicated person. We reiterate that this court already has recognized such a claim in *Ibach*. In addition, for the reasons that follow, we do not agree that the cases defendants rely on support a contrary holding.

Defendants rely, in part, on the following statement that this court made in *Miller*, 288 Or at 279:

> "This court has never previously recognized a common-law cause of action in favor of a person who suffers injury resulting from his or her own consumption of alcohol."

*Miller* was a third-party action brought by the City of Portland and one of its police officers (collectively the City)

against the operators of a tavern. Miller had sued the City as a result of personal injuries that she and her companion, Kolibaba, had sustained as a result of a traffic accident involving a police car and Kolibaba's motorcycle, on which Miller was a passenger. Both Miller and Kolibaba were minors, and the complaint alleged that both were "visibly intoxicated" when the tavern operators provided them with alcohol. The City settled Miller's claims and sought contribution from the tavern operators, the third-party defendants. *Id.* at 273.

One of the allegations in the City's complaint was a first-party negligence claim,[6] like plaintiffs' claim in this case, that alleged that the tavern owners were liable to Miller because they negligently had served alcohol to Miller while she was visibly intoxicated. *Id.* at 274. In its decision, the court did not cite *Ibach* and refused to "create" such a common-law claim, relying solely on the Oregon Dram Shop Act as a basis for that refusal. *Id.* at 280, *citing former* ORS 30.730 (1977).[7] That act provided for a cause of action brought by the "wife, husband, parent or child" of an intoxicated patron, but did not provide for an action by a person injured as a result of his or her own intoxication. Based on the wording of *former* ORS 30.730 (1977), the *Miller* court reasoned:

> "When the legislature has considered the liability to the inebriate's immediate family which should result from the giving of alcoholic liquor to him but has refrained from giving him a cause of action, we conclude it is probable [that the legislature] must have considered the matter and rejected any cause of action for him. We, therefore, consider a cause of action for his benefit inappropriate."

*Id.* (footnote omitted).

Notably, *Miller* was not the only case in which the court has considered whether the Dram Shop Act contained

---

[6] The City was subrogated in favor of Miller, with whom it had settled. The tavern owners were liable to the City only if they would have been liable to Miller had she brought an action against them. *Id.* at 274.

[7] The legislature repealed *former* ORS 30.730 (1977) in 1979, replacing it with ORS 30.950. Or Laws 1979, ch 801, § 4.

the exclusive list of those people who could maintain a negligence action against a supplier of liquor. In *Wiener v. Gamma Phi, ATO Frat.*, 258 Or 632, 638-39 n 2, 485 P2d 18 (1971), the court specifically rejected that proposition and permitted a third-party negligence claim against a social host to proceed to trial. The court in *Wiener* reasoned that the legislature *did not* intend for the Dram Shop Act to be the sole civil remedy against persons who furnish alcohol to others, because the Act provided a remedy for such a limited class of plaintiffs. *Id.* Both *Ibach* and *Wiener* predated *Miller*. Both established that the court's view in *Miller* of the scope of the Dram Shop Act was incorrect.

The court in *Miller*, although it never discussed *Ibach*,[8] acknowledged the footnote in *Wiener* and reasoned as follows:

"In *Wiener* * * * we said the dram shop statute did not prescribe the sole civil remedy against persons who furnish liquor to others because it provided a remedy for a very limited class of plaintiffs. We agree with this statement as it applied to the facts of that case in which the plaintiff was an unrelated third party who was injured by the intoxicated person. We do not believe the statement is applicable in a situation in which the intoxicated person himself is the claimant because of his close relationship to the named class. It would have been the natural thing to include him as a beneficiary of the statute with the rest of his immediate family had the legislature desired to do so."

*Miller*, 288 Or at 280 n 13.

The footnote in *Miller* proposes that, if the legislature had intended to permit an intoxicated person to recover damages in a first-party claim (as in this case), then the legislature would have included the intoxicated person as a beneficiary under the Dram Shop Act with the rest of his or her immediate family. That proposition is not historically accurate, however. In 1913, when the legislature enacted the Dram Shop Act, no person in the intoxicated person's position could have recovered in a negligence action, because such a claim would have been defeated by the (then) well-recognized

---

[8] For reasons that we cannot understand, the case was not cited to the *Miller* court by any of the parties.

doctrines of contributory negligence and assumption of the risk. Contrary to the footnote in the *Miller* opinion, and given the persuasive status of those doctrines when the legislature enacted the Dram Shop Act, it would have been contradictory for the legislature to include a person who voluntarily consumes alcohol—thus excluding the intoxicated person from those doctrines. It is not the exclusion of the intoxicated person that is remarkable; inclusion would have been remarkable. It follows from the foregoing that the narrow reading of the Dram Shop Act in *Miller* was mistaken.

■     Although we recognize that *Miller* and *Ibach* reached different results with regard to first-party negligence claims, *Miller* did not overrule *Ibach* expressly. Moreover, for three reasons, we conclude that *Miller* did not overrule *Ibach sub silentio*. We acknowledge, at the outset, that the court in *Miller* went further than simply failing to mention *Ibach*—it affirmatively asserted that this court *never* had recognized a first-party claim in these circumstances—an assertion that patently was inaccurate. Second, not only was *Miller* incorrect in its characterization of the state of the law, the court based its entire analysis concerning the plaintiff's first-party negligence claim on that faulty premise. Third, and finally, we note that the court in *Miller* predicated its refusal to "create * * * a common law cause of action for the benefit of the intoxicated person" solely on its mistakenly narrow reading of the Dram Shop Act. Although the legislature may abrogate rules of the common law by statute, the *Ibach* court's recognition of a common-law negligence claim on behalf of a first-party plaintiff occurred *after* the enactment of the Dram Shop Act relied on in *Miller*.[9] Accordingly, absent legislative or judicial abrogation, the common-law rule established in *Ibach* was in effect when this court decided *Miller*. *See State v. Black*, 193 Or 295, 301, 236 P2d 326 (1951) (rules of common law that have not been modified or abrogated are binding on courts). However, for reasons that are not clear from

---

[9] As noted, Oregon enacted its original Dram Shop Act in 1913. General Laws of Oregon, ch 51, § 1, pp 82-83 (1913). The original statutory wording survived almost unchanged until 1979, when the legislature repealed the Dram Shop Act, replacing it with ORS 30.950. Or Laws 1979, ch 801, § 4. Although the Dram Shop Act existed at the time *Ibach* was decided in 1934, the court in *Ibach* expressly rejected the defendant's contention that the plaintiff's complaint was based on that act. *Ibach*, 148 Or at 99.

the text of that decision, the *Miller* court neither acknowledged nor discussed *Ibach* and, instead, chose to analyze the City's common-law negligence exposure under the Dram Shop Act, in effect stating that "our hands are tied."

■ ˙ This court ordinarily considers itself bound by a previous holding of this court regarding the content of the common law. But it does not consider itself to be bound by an inaccurate statement of that law. Defendants do not separately advance any principled argument to show that *Ibach* — as opposed to *Miller* — was wrong when decided. See *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988) (court may reconsider court-created common-law rule when earlier case was "wrong when it was decided"). That is not an inquiry that we deem appropriate to make on our own. Accordingly, we conclude that *Ibach* remains an accurate statement of the common-law rule in Oregon.

*Sager* is the second case that defendants rely on for the proposition that it would be inconsistent with legislative policy to "recognize" an intoxicated patron's common-law claim in negligence for damages resulting from the patron's own intoxication. Relying on *Miller*, the court in *Sager* repeated the inaccurate assertion made in *Miller*, stating: "Oregon never has recognized a common law claim against alcohol providers in favor of a person who suffers injury resulting from his or her own intoxication." *Sager*, 296 Or at 35.

Apart from its inaccuracy, that comment was *dictum*. The sole issue in *Sager* was whether ORS 30.950 (1983) created a claim in favor of an intoxicated person against a liquor licensee for off-premises injuries.[10] *Id.* at 35. *Sager* held that alcohol providers were liable under ORS 30.950 (1983) only for injuries suffered *off* premises by *third* parties. *Id.* at 40. That holding has no bearing on this case — plaintiffs in this case do not allege a claim under ORS 30.950. *See, e.g., Chartrand v. Coos Bay Tavern*, 298 Or 689, 695-96,

---

[10] ORS 30.950 (1983) provided:

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

696 P2d 513 (1985) (recognizing third party's statutory liability claim under ORS 30.950 and common-law negligence claim as separate and distinct theories of liability). Furthermore, plaintiff suffered his injuries *on* defendants' premises. Consequently, like *Miller*, *Sager* provides no support for defendants.

Defendants also argue against the "creation" of a claim on behalf of an intoxicated patron, because "[r]esponsibility for injuries incurred by the intoxicated person [should] remain[ ] with the person whose voluntary act resulted in the injury." Defendants recognize that the legislature has abolished both contributory negligence and implied assumption of the risk as defenses and has replaced them with comparative fault. *See* ORS 18.470 (abolishing contributory negligence standard and replacing it with comparative fault system); ORS 18.475 (abolishing doctrine of implied assumption of the risk). Nevertheless, defendants argue that comparative negligence principles should not apply in a case brought as a first-party action by an intoxicated person. Instead, defendants in effect ask us to rule that plaintiff's "participation" in the "condition" that led to his injuries should lead to the dismissal of a common-law claim in his favor—a ruling that would revive by court decision the doctrines of contributory fault and assumption of the risk that the legislature has abolished.

In *Grady v. Cedar Side Inn, Inc.*, 330 Or 42, 997 P2d 197 (2000), this court held that a third-party plaintiff who allegedly had participated in the intoxication of the driver of a car in which the plaintiff was injured was not barred by that participation from bringing a common-law negligence claim against the alcohol provider who allegedly had served the driver while the driver was visibly intoxicated. The court stated:

> "Any complicity on the part of [the] plaintiff in [his driver's] intoxication and any consequent apportionment of fault attributable to plaintiff for his own injuries are issues to be addressed by the trier of fact under Oregon's comparative fault regime."

*Id.* at 50.

■ Those same principles apply in this case. Under Oregon's comparative fault regime, a comparison of the relative fault of defendant-alcohol server and plaintiff-alcohol consumer is a matter for the trier of fact to weigh in its apportionment of responsibility for plaintiff's injuries. If this court were to hold that a plaintiff's consumption of alcoholic beverages constitutes negligence that bars a claim for injuries suffered as a result of the plaintiff's own intoxication, then that would revive the concept of contributory negligence in those circumstances. The legislature, however, has made a contrary choice in the comparative fault statute, and we are bound by it. Similarly, any decision by this court declaring that the consumption of alcoholic beverages is a form of implied assumption of the risk that bars a claim by a plaintiff for injuries suffered as a result of his or her own intoxication would revive a defense that also has been abolished. We decline defendants' invitation to undermine the legislature's policy choices in this area.

■ ■ Our decision today does not relieve intoxicated patrons of their own responsibility to act reasonably to take care of themselves. Under the comparative fault statute, a properly instructed jury may reduce significantly or negate any recovery when the plaintiff's own unreasonable conduct has contributed to the plaintiff's injuries. As this court stated in *Dahl v. BMW*, 304 Or 558, 566, 748 P2d 77 (1987):

> "The test of reasonableness is properly left for the fact-finder, because it usually involves an assessment of all the facts leading up to the injury and a determination which factors played some role in causing the injuries suffered by a plaintiff. Whether the plaintiff, as an individual, acted reasonably[,] * * * whether this action contributed to the plaintiff's injuries, and what portion of plaintiff's injuries were caused by [the plaintiff's conduct] are factual questions, better answered by the trier of fact after hearing the evidence than decided as a matter of law by a judge prior to trial."

We hold that a plaintiff may bring a common-law negligence action against a person or entity that negligently supplied alcohol to the plaintiff when he or she already was visibly intoxicated and the plaintiff suffered injuries caused by that negligent conduct. Plaintiffs' fifth claim for relief

alleges that defendants are liable, under a theory of common-law negligence, for continuing to serve alcohol to plaintiff after he was visibly intoxicated "when [they] knew, or should have known * * * that further service of alcohol to plaintiff * * * was likely to cause injury to him." In *Campbell v. Carpenter*, 279 Or 237, 243-44, 566 P2d 893 (1977), this court recognized a common-law negligence claim against a tavern keeper who serves a visibly intoxicated patron who then causes injury to a third person in an automobile accident. The court in *Campbell* quoted with approval from *Rappaport v. Nichols*, 31 NJ 188, 156 A2d 1, 9, 75 ALR2d 821 (1959), a New Jersey case, which stated:

> " 'When alcoholic beverages are sold by a tavern keeper * * * to an intoxicated person, the unreasonable risk of harm * * * to * * * the intoxicated person * * * may readily be recognized and foreseen[.]' "

*Campbell*, 279 Or at 240. Plaintiffs have alleged those necessary facts in this case. Consequently, we hold that the trial court erred in dismissing plaintiffs' fifth claim for relief.

Plaintiffs do not seek review of the dismissal of their sixth claim for relief, which alleged that defendants undertook a special duty to protect intoxicated patrons from injuring themselves and that they were negligent in violating that duty. Therefore, we proceed to consider plaintiffs' seventh claim for relief, which is based on a theory of premises liability.

Plaintiffs' seventh claim for relief alleges that defendants are liable for failing to make their premises reasonably safe for plaintiff, an invitee, in one or more of the following ways:

> "a.   In providing a lengthy set of stairs as the only means of egress for plaintiff * * *.
>
> "b.   In failing to provide an elevator as an alternative to the stairs for descending from the second level.
>
> "c.   In failing to warn plaintiff * * * of the dangers inherent in walking down the steps while in an intoxicated condition.
>
> "d.   In failing to carpet the landing at the bottom of the stairs.

"e. In having a vending machine on the landing at the bottom of the stairs."

Under Oregon law, a property owner must make its property reasonably safe for an invitee's visit, exercise reasonable care to discover risks, and eliminate those risks or warn the invitee about those risks, to enable the invitee to avoid the harm. *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984). Furthermore, it is well established in Oregon that a proprietor's obligation to make its premises reasonably safe for its invitees includes taking into account the use to which the premises are put. *See, e.g., Ragnone v. Portland School Dist. No. 1J*, 291 Or 617, 621 n 3, 633 P2d 1287 (1981) (so stating); *Mickel v. Haines Enterprises, Inc.*, 240 Or 369, 371-72, 400 P2d 518 (1965) (landowner must "take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the premises").

Because one of the primary purposes of defendants' invitation to their tavern is the consumption of alcohol by customers, defendants were obligated to make their premises reasonably safe in light of that purpose. Plaintiffs have alleged that defendants failed to do so. As part of their allegation that defendants failed to make their premises reasonably safe, plaintiffs alleged that defendants knew "the use the premises would be put to [*sic*]—*i.e.*, a lounge in which large amounts of alcohol would be served—and [knew] that intoxicated patrons would have to use a lengthy set of steps to descend from the lounge, and further [knew], or should have known, that such use of the steps by intoxicated patrons would be likely to cause injury to the patron." In other words, plaintiffs have alleged that defendants failed to take reasonable precautions to protect their invitees from dangers that they could foresee from the use of their premises. Those allegations state a valid premises liability claim.

We note that the degree to which plaintiff's intoxication contributed to his injuries has no bearing on whether plaintiffs' complaint *sufficiently stated a claim for premises liability*. As with plaintiffs' common-law negligence claim, a comparison of the relative fault of defendant-tavern owner and plaintiff-invitee is a matter for the trier of fact to weigh

in its apportionment of responsibility for plaintiff's injuries. *See, e.g., Woolston*, 297 Or at 556 (error to instruct jury that defendant is liable only if reasonable person entering defendant's land would not realize danger or would protect himself against it; such an instruction frustrates purpose of comparative fault).

We conclude, in light of the foregoing discussion, that plaintiffs have alleged facts sufficient to constitute a claim for premises liability. Accordingly, we hold that the trial court erred in dismissing plaintiffs' seventh claim for relief.

Finally, plaintiffs' eighth claim for relief is for damages stemming from plaintiff Lottie Ann Fulmer's loss of consortium. The Court of Appeals reasoned that, because the trial court properly had dismissed plaintiffs' seven other claims for relief, "it necessarily follows that [Lottie Ann] has failed to state a claim for loss of consortium * * *." *Fulmer*, 152 Or App at 344. Because we hold that plaintiffs' complaint states valid claims for negligence (fifth claim for relief) and for premises liability (seventh claim for relief), we conclude that that ground for dismissal of plaintiffs' loss of consortium claim does not apply. We know of no other ground that would justify dismissal of that claim. Consequently, we conclude that plaintiffs have alleged facts sufficient to state a claim for loss of consortium and, therefore, that the trial court erred in dismissing plaintiffs' eighth claim for relief.

In summary, we hold that the facts alleged in plaintiffs' complaint support claims for negligence and for premises liability (counts five and seven), and a valid claim by Lottie Ann Fulmer for loss of consortium (count eight). We therefore reverse that part of the trial court's judgment dismissing those claims. As to plaintiffs' remaining claims, we affirm the trial court's judgment.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.