Argued and submitted October 23, 2012, affirmed May 15, petition for review denied September 12, 2013 (354 Or 148)

Ashley SCHUTZ,
*Plaintiff-Appellant,*

*v.*

LA COSTITA III, INC.,
*Defendant-Respondent,*

*and*

O'BRIEN CONSTRUCTORS, LLC
and Keeley O'Brien,
*Defendants.*

Multnomah County Circuit Court
101217338; A148768

302 P3d 460

J. Randolph Pickett argued the cause for appellant. With him on the briefs were Lisa T. Hunt and Law Office of Lisa T. Hunt, LLC, and Kristen J. West and Pickett Dummigan LLP.

Mark P. Scheer argued the cause for respondent. With him on the brief was Robert W. Kirsher.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

After drinking past the point of intoxication at defendant's bar, plaintiff attempted to drive home and was severely injured when she entered an interstate highway driving in the wrong direction and collided with another car. She brought this action against the bar, alleging negligence for having served her "when she had already consumed excessive quantities of alcohol," for failing to prevent her from driving home despite knowing that she was too intoxicated to do so safely, and for failing to arrange alternative transportation.[1] The trial court granted defendant's motion to dismiss plaintiff's claims, concluding that they were barred by ORS 471.565(1), under which a person who "voluntarily consumes alcoholic beverages * * * does not have a cause of action * * * against the person serving the alcoholic beverages, even though the alcoholic beverages are served" to the person while visibly intoxicated. On appeal, plaintiff argues that the trial court erred in applying ORS 471.565(1) because, when she consumed the beverages that caused her to have the accident, she was too intoxicated to do so "voluntarily." She also argues that her accident was not caused by intoxication, but by the bar's failure to adequately protect her. In the alternative, she argues that, if the statute does bar her claims, then it deprives her of a remedy for injury to her person, in violation of Article I, section 10, of the Oregon Constitution, as well as a jury trial, in violation of Article I, section 17.[2] Because we conclude that ORS 471.565(1) bars plaintiff's claim and that the statute does not violate Article I, sections 10 or 17, in this case, we affirm.

In reviewing a trial court ruling on a motion to dismiss for failure to state a claim for relief, ORCP 21 A(8), we accept as true all of the factual allegations and give the non-moving party the benefit of all favorable inferences that can be drawn from those allegations. *American Fed. Teachers v.*

---

[1] Plaintiff's complaint also named her supervisor and their employer as defendants on the ground that they were also responsible for her intoxication. Neither is a party to this appeal. "Defendant" refers throughout only to La Costita III, Inc.

[2] The Remedy Clause of Article I, section 10, of the Oregon Constitution provides, "[E]very man shall have remedy by due course of law for injury done him in his person, property, or reputation." Article I, section 17, provides, "In all civil cases, the right of Trial by Jury shall remain inviolate."

*Oregon Taxpayers United,* 345 Or 1, 18, 189 P3d 9 (2008). Under that standard, the facts are as follows.

At the end of her work day, plaintiff accompanied her supervisor and some coworkers to defendant's restaurant. Over the course of four hours, plaintiff's supervisor purchased several alcoholic drinks for plaintiff; the drinks were served to her by defendant's employees. After consuming these drinks, plaintiff became intoxicated, with accompanying loss of volitional decision-making, motor control, and sense of care and caution. Thereafter, her supervisor continued to purchase, and defendant continued to serve, additional alcoholic beverages, which plaintiff continued to consume. By the time she left defendant's restaurant, she was extremely intoxicated and suffering the effects of acute alcohol poisoning.

While driving home, plaintiff entered I-5 on a northbound off ramp, traveling southbound in the wrong direction, and collided with another vehicle. She was taken to a hospital where, upon admission, her blood alcohol level was 0.24 percent, or three times the legal definition of intoxication for purposes of driving under the influence of intoxicants. She sustained severe injuries, resulting in quadriplegia.

Plaintiff filed this negligence action, alleging that defendant's conduct was a substantial factor in causing her injuries and that it was negligent in the following ways:

"a) In serving alcoholic beverages for plaintiff at a time when she had already consumed excessive quantities of alcohol, which earlier drinks had also been served by defendant La Costita, so that plaintiff's volitional decision-making was severely impaired, and she was no longer capable of voluntarily consuming alcoholic beverages, and was involuntarily consuming the additional alcoholic beverages purchased by defendant O'Brien Constructors;

"b) In abandoning plaintiff in a state of acute alcohol intoxication and alcohol poisoning, by permitting plaintiff to leave its bar and restaurant, at a time when defendant La Costita knew, or in the exercise of reasonable care should have known, that plaintiff was manifesting physical and visible signs of acute alcohol intoxication and poisoning, and

no longer capable of operating a motor vehicle, yet was intending to drive home herself;

"c) In failing to arrange for safe, alternate transportation home for plaintiff, such as by calling a cab, at a time when defendant La Costita knew, or in the exercise of reasonable care, should have known, that plaintiff was acutely intoxicated and incapable of operating a motor vehicle."

Defendant moved to dismiss plaintiff's claim, arguing that she failed to plead facts sufficient to constitute a claim for relief, ORCP 21 A(8), because ORS 471.565(1) completely bars so-called "first person" intoxication claims—that is, claims against a server of alcohol that are brought by the person to whom the alcohol was served, for injuries caused by the person's intoxication. ORS 471.565(1) provides,

"A patron or guest who *voluntarily* consumes alcoholic beverages served by a person licensed by the Oregon Liquor Control Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. The provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest."

(Emphasis added.) Plaintiff's theory was that she did not "voluntarily" consume alcoholic beverages, that her injuries were caused by "acts other than the service of alcoholic beverages," and that, if the statute did bar her claims, it violated her constitutional right to a remedy for injury and to a jury trial. The trial court rejected plaintiff's arguments and entered a limited judgment dismissing her claims against defendant.

On appeal, ORS 19.205(1), plaintiff advances several of the arguments that she made below. First, she argues that the plain text of ORS 471.565(1) does not bar her specification of negligence for over-service of alcohol because, although she initially voluntarily consumed alcohol served by defendant, at some point thereafter, she was so intoxicated

that her consumption of subsequent alcoholic beverages served by defendant became involuntary. Plaintiff also argues that ORS 471.565(1) does not bar her second and third specifications of negligence, abandonment and failure to arrange safe transportation, because those specifications allege negligence based on acts other than service of alcohol and are thereby excepted from immunity under the second sentence of ORS 471.565(1). Alternatively, she argues that, if we determine that ORS 471.565(1) bars her negligence claims, the statute violates Article I, section 10, because, at common law, when the Oregon Constitution was adopted in 1857, a person had a remedy for a claim for personal injury caused by another person's negligence, and ORS 471.565(1) deprives plaintiff of a remedy for her similar claim. Finally, plaintiff argues that the statute violates Article I, section 17, by depriving her of the right to a jury trial.

Although, as noted, in reviewing a trial court's grant of a motion under ORCP 21 A(8) for failure to state a claim, we accept as true all of the allegations, *American Fed. Teachers*, 345 Or at 18, we nonetheless review the ruling itself for errors of law, *Moser v. Mark*, 223 Or App 52, 55, 195 P3d 424 (2008). The distinction is important in addressing plaintiff's first argument, because it revolves around the assertion in her complaint that she did not consume the injury-causing alcohol "voluntarily." That assertion, however, does not state a fact in this case; its validity depends on the interpretation of the word "voluntarily" in ORS 471.565(1), and questions of statutory interpretation are matters of law for the court. In other words, plaintiff cannot avoid dismissal by merely alleging that her consumption was not voluntary. We must therefore begin by determining what "voluntarily" means in the context of ORS 471.565(1).

Contrary to the parties' assertions, we cannot conclude that the term in context has a single plain meaning. In plaintiff's view, the plain meaning is that an act is voluntary only when it results from the conscious exercise of judgment, and that when a person is severely intoxicated, the capacity for such judgment is lacking. That is a plausible definition; in ordinary discourse, people routinely say that a volitionally incapacitated person who engages in conduct

that he or she would otherwise have avoided does not engage in that conduct "voluntarily." On the other hand, in some contexts, when we say that an action is "voluntary," we mean that it results from the conscious deployment of certain physiological functions; thus, for example, walking and eating are voluntary, while salivation, blood circulation, and (in most instances) breathing are "involuntary." In yet other situations—including, in defendant's view, this one—a "voluntary" action is one that is not the result of coercion, trickery, or constraint (as occurs when a hungry person orders food at a restaurant and eats it) while an "involuntary" action is impelled (as when a hunger-striking prisoner is force-fed) or the result of deceit (as when a person consumes a meal that she has been told is healthy but which, in fact, is poison). That meaning is plausible as well.[3]

We conclude, however, that the context of ORS 471.565(1) and the circumstances surrounding its adoption, as well as more conventional legislative history, demonstrate that defendant's definition is the most plausible. ORS 471.565 was enacted as Senate Bill 925 in 2001 in response to the Oregon Supreme Court's decision in *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 330 Or 413, 9 P3d 710 (2000). Or Laws 2001, ch 534, § 1. The plaintiffs in that case, husband and wife, sought relief for injuries that the husband sustained from falling down the defendants' stairs after the defendants allegedly served him alcohol while he was visibly intoxicated. *Id.* at 416-17. The complaint, like the one in this case, alleged that the defendants served a substantial quantity of alcohol to the husband while he was dining at the defendants' restaurant and that, at some point after he became visibly intoxicated, the defendants continued to serve him alcohol, causing him "'to become poisoned with alcohol, [and] to lose his sense of reason and volition * * *.'" *Id.* The plaintiff lost consciousness and fell down the stairs,

---

[3] Each of these plain meanings finds support in the dictionary. The term is defined to mean, among other things, "proceeding from the will * * * produced in or by an act of choice * * * performed, made, or given of one's own free will." Those definitions tend to support plaintiff's interpretation. Others support defendant: "[N]ot accidental * * * acting of oneself * * * not constrained, impelled, or influenced by another." *Webster's Third New Int'l Dictionary* 2564 (unabridged ed 2002). The dictionary, in other words, presents the interpretational problem but, as usual, does not solve it.

sustaining serious injuries. *Id.* at 417. The plaintiffs' complaint alleged that, by continuing to serve alcohol to husband after he was visibly intoxicated, defendants violated ORS 471.410(1) (1993),[4] ORS 471.412(1) (1993),[5] and *former* ORS 472.310(3) (1993).[6] *Id.* Those statutes prohibited the sale and service of alcohol to a person who is visibly intoxicated. After deciding that the statutes did not afford the plaintiffs a negligence *per se* claim, the court confronted the question whether Oregon common law recognized an intoxicated person's claim for alcohol-caused damages against the server or establishment that supplied the alcohol to the injured person when the person was visibly intoxicated. *Id.* at 419.

The *Fulmer* plaintiffs relied on the Supreme Court's 1934 decision in *Ibach v. Jackson*, 148 Or 92, 35 P2d 672 (1934). That case recognized, for the first time, a common-law claim in favor of an intoxicated person on the theory that a defendant had negligently furnished the person alcohol. *Id.* at 102-03; *Fulmer*, 330 Or at 419-20. For their part, the *Fulmer* defendants relied on *Miller v. City of Portland*, 288 Or 271, 279, 604 P2d 1261 (1980), decided after *Ibach*; *Miller*, without referring to *Ibach*, held that Oregon did *not* recognize first party common-law negligence claims in favor of an intoxicated person. *Fulmer*, 330 Or at 419, 421-24. The

---

[4] ORS 471.410(1) (1993) provided:

"No person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated."

The legislature amended ORS 471.410 in 2009. Or Laws 2009, ch 412, § 1, ch 587, § 4, ch 608, § 3.

[5] ORS 471.412(1) (1993) provided:

"No licensee or permittee shall knowingly allow a person to consume or to continue to consume alcoholic beverages on the licensed premises after observing that the person is visibly intoxicated."

The legislature amended ORS 471.412 in 2011. Or Laws 2011, ch 107, § 2.

[6] *Former* ORS 472.310 provided, in part:

"It shall be unlawful:

"* * * * *

"(3) For any person to serve, sell or dispense alcoholic liquor to any person * * * who is visibly intoxicated. However, nothing in this subsection prohibits any licensee from allowing a person who is visibly intoxicated from remaining on the licensed premises so long as the person is not sold or served any alcoholic liquor."

The legislature repealed ORS 472.310 in 1995. Or Laws 1995, ch 301, § 74.

*Fulmer* court followed *Ibach*, concluding that *Miller* was an inaccurate statement of the common law. *Id.* at 424-26. Thus, *Fulmer* held that "a plaintiff may bring a common-law negligence action against a person or entity that negligently supplied alcohol to the plaintiff when he or she already was visibly intoxicated and the plaintiff suffered injuries caused by that negligent conduct." *Id.* at 427.

In response to *Fulmer*, the Oregon Restaurant Association proposed SB 925 in 2001, described as "legislation to ensure than an establishment is not liable if customers who consume alcohol under their own free will injure themselves." Testimony, Senate Judiciary Committee, SB 925, Mar 13, 2001, Ex A (statement of Bill Perry). During a hearing of the House Judiciary Committee, members of the committee discussed the effect of the statute on barring first-party claims:

"REPRESENTATIVE V. WALKER: * * * [S]o here's the scenario that I've got in my mind. You're in a bar drinking. The bartender does not cut you off and you are visibly intoxicated, which I think there is some liability there. But anyway, you get in your own car and you drive home and you smash your car and you die. Is—your estate cannot sue the bar.

"REPRESENTATIVE SHETTERLY: Right.

"REPRESENTATIVE V. WALKER: Is that what this bill would be?

"REPRESENTATIVE SHETTERLY: That would be the effect of it.

"REPRESENTATIVE V. WALKER: *So there's no liability on the part of the bartender to stop serving you alcohol at some point?*

"REPRESENTATIVE SHETTERLY: Mr. Chair?

"CHAIR WILLIAMS: *Yes.*

"REPRESENTATIVE SHETTERLY: I would bet that in most cases this is not a problem, because I would expect that the bar owner is going to be a lot more concerned about your risk of harm to * * * third persons. So this is not going

to * * * to create an incentive for bar owners to serve people in an intoxicated state.

"REPRESENTATIVE V. WALKER:   Right.

"REPRESENTATIVE SHETTERLY:   And clearly it's not, because the greater risk is they're going to go out and hurt somebody else, in which case then the bar owner is still liable. But I think to the extent that this recognizes some element of personal responsibility for damages *that you cause to yourself through your own voluntary intoxication*, I think it's a fair balancing."

(Emphases added.) Tape Recording, House Committee on Judiciary, SB 925A, May 23, 2001, Tape 69, Side A. The italicized statements indicate, albeit somewhat obliquely, a legislative understanding that the statute would bar claims against alcohol servers by intoxicated patrons who injure themselves as a result of their own actions. To the extent that the final statute resulted from a compromise between restaurant and bar owners, on the one hand, and potential plaintiffs and their attorneys on the other hand, the plaintiffs retained, in the second sentence of section (1) of the statute, a cause of action for premises liability unrelated to the service of alcohol and, in section (2) of the statute, a limited set of circumstances in which third parties injured by an intoxicated person can bring a cause of action against a server of alcohol:

"(1)   * * * The provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest.

"(2)   A person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the commission or social host is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:

"(a)   The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(b)   The plaintiff did not substantially contribute to the intoxication of the patron or guest by:

"(A)   Providing or furnishing alcoholic beverages to the patron or guest;

"(B)   Encouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner; or

"(C)   Facilitating the consumption of alcoholic beverages by the patron or guest in any manner."

ORS 471.565.

More significantly—indeed, dispositively—we rely on the precept that we should avoid interpreting a statute so as to produce an absurd result, a precept that

"is best suited for helping the court to determine which of two or more plausible meanings the legislature intended. In such a case, the court will refuse to adopt the meaning that would lead to an absurd result that is inconsistent with the apparent policy of the legislation as a whole."

*State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996). We cannot believe that, in an attempt to negate the holding in *Fulmer*—that the server of an alcoholic beverage to a visibly intoxicated patron can incur liability for the patron's injuries—the legislature would have enacted a statute that provided immunity for serving visibly intoxicated patrons but not for serving patrons who had crossed the (invisible) line between visible intoxication and volition-negating intoxication. Nor would legislators have enacted a statute that required factfinders in cases such as this to determine whether, and to what extent, a plaintiff's injuries were the result of alcohol consumed before the loss (invisible) of volition and alcohol consumed afterward.

We therefore decline to interpret ORS 417.565(1) to allow the claim alleged by plaintiff here. Without necessarily adopting a bright-line rule that "voluntary" consumption of alcohol includes only consumption that is free from coercion, deceit or trickery, we nonetheless conclude that the consumption of that nature that occurred here was voluntary. On the facts of this case as alleged against defendant in the complaint, plaintiff's consumption of alcohol was voluntary

and her first specification of negligence for serving her alcohol is barred by ORS 417.565(1).

That conclusion necessarily requires the rejection of her arguments based on the second sentence of ORS 417.565(1):

"The [immunity] provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest."

Plaintiff maintains that this sentence permits her claims based on her second and third specifications, alleging that defendant was negligent:

"b) In abandoning plaintiff in a state of acute alcohol intoxication and alcohol poisoning, by permitting plaintiff to leave its bar and restaurant, at a time when defendant La Costita knew, or in the exercise of reasonable care should have known, that plaintiff was manifesting physical and visible signs of acute alcohol intoxication and poisoning, and no longer capable of operating a motor vehicle, yet was intending to drive home herself;

"c) In failing to arrange for safe, alternate transportation home for plaintiff, such as by calling a cab, at a time when defendant La Costita knew, or in the exercise of reasonable care, should have known, that plaintiff was acutely intoxicated and incapable of operating a motor vehicle."

Plaintiff relies on four cases that, she argues, apply common-law negligence law so as to permit claims by intoxicated patrons against servers for unreasonable failure to avoid foreseeable risk of harm. The four cases are *Ibach*, 148 Or at 92; *Wiener v. Gamma Phi, ATO Frat.*, 258 Or 632, 485 P2d 18 (1971); *Campbell v. Carpenter*, 279 Or 237, 566 P2d 893 (1977); and *Cunningham v. Happy Palace, Inc.*, 157 Or App 334, 970 P2d 669 (1998), *rev den*, 328 Or 365 (1999). Defendant maintains that all of those cases are factually distinguishable. In *Ibach*, the defendant physically compelled the plaintiff to consume alcohol and then left her alone to die of injuries in a hotel room, 148 Or at 96; it

therefore is not relevant to a case such as this one where the consumption was voluntary, as we have interpreted that term. *Weiner* involved a third-party complaint by one guest against a social host who was injured by the actions of a different guest who had been negligently served, 258 Or at 636-67; *Campbell* was also a third-party case in which the intoxicated patron who inflicted injury on the plaintiff had been evicted from the defendant tavern, 279 Or at 239. As those cases deal with third-party claims, they, too, have no bearing on the interplay between the immunity conferred by the first sentence of ORS 471.565(1) and the exception in the second. In *Cunningham*, the plaintiff suffered foreseeable injury after having been evicted from a bar while attempting to telephone her daughter for a ride home. 157 Or App at 336-40. The case was decided before the enactment of ORS 471.565(1), and it does not survive that subsequently enacted statute.

The second sentence of ORS 471.565(1) permits causes of action that are *not* caused by the service of alcoholic beverages, and there is nothing in plaintiff's complaint from which a juror could find or infer that plaintiff's injuries were caused by anything else. Put another way: Had plaintiff *not* voluntarily consumed alcoholic beverages, there could not possibly have been any foreseeable risk that allowing her to depart or failing to call alternative transportation would have caused her injury. Further, as defendant also notes, providing immunity for servers who provide alcohol to visibly intoxicated patrons, but simultaneously revoking that immunity if the servers fail to ensure the patron's safety, would effectively create an exception that swallows the rule. In sum, we conclude that ORS 471.565(1) bars all of plaintiff's negligence specifications.

We must therefore address plaintiff's constitutional claims. According to plaintiff, if we conclude, as we have, that ORS 471.565(1) bars her common-law negligence claim against defendant, then ORS 471.565(1) violates Article I, section 10, by depriving her of a remedy for injury to her person. In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 119, 124, 23 P3d 333 (2001), the Supreme Court explained that the remedy clause of Article I, section 10, was "intended

to preserve common-law right[s] of action," and the court set out the general framework for determining whether a legislative enactment violates that requirement:

> "[I]n analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

Thus, under *Smothers*, our first question is whether the common law of Oregon in 1857 would have recognized a cause of action for plaintiff's claimed injury. If the answer to that question is no, then the remedy clause is not implicated, and the matter is at an end. If the answer to the first question is yes, then we must determine whether the challenged statute provides a "constitutionally adequate substitute."

The first question highlights a difficult problem in remedy clause jurisprudence: What level of generality we should adopt when determining whether a cause of action existed at common law in 1857 Oregon? Defendant maintains that the proper focus is specific; the proper inquiry is not whether there was a cause of action for negligence in 1857, but whether there was a first-party cause of action by a patron who had been served alcohol, against the server who negligently served him or her. Relying on unambiguous language from *Fulmer*, defendant concludes that there was not:

> "In Oregon, criminal penalties for the sale of alcohol to intoxicated persons first were enacted in 1876. *See* Annotated Laws of Oregon, v I, ch VIII, title II, § 1914, p 965 (Hill 1887) ('It shall be unlawful for any person to knowingly sell * * * any spirituous or other intoxicating liquors * * * to any intoxicated person, or to any person who is in the habit of becoming intoxicated[.]'). Legislation passed in 1913, known as the Dram Shop Act, created

limited statutory civil liability for the same acts. General Laws of Oregon, ch 51, § 1, pp 82-83 (1913); *see, e.g.*, *Gattman v. Favro*, 306 Or 11, 16-17, 757 P2d 402 (1988) (discussing origins of statutory tort liability for service of alcohol). *Before 1934, neither an intoxicated first party nor a third party injured as a result of an intoxicated person's actions could bring a claim for common-law negligence against an alcohol provider. Hawkins* [*v. Conklin*], 307 Or [262,] 266, [767 P2d 66 (1988)]. In 1934, however, this court in *Ibach* departed from the historical rule disallowing common-law claims against alcohol providers and recognized for the first time a common-law claim in favor of an intoxicated person on the theory that the defendant negligently had furnished the person alcohol. *Ibach*, 148 Or at 102-03."

330 Or at 419 (emphasis added). Defendant points to the emphasized portion of the court's opinion above—"*Before 1934, neither an intoxicated first party nor a third party injured as a result of an intoxicated person's actions could bring a claim for common-law negligence against an alcohol provider*"—as conclusive evidence that the common law of Oregon in 1857 did not recognize a claim against a server of alcohol by an intoxicated first party. Plaintiff, however, urges us to adopt a higher level of generality. She maintains that the proper question is whether "the right to recover for negligently-inflicted personal injuries exist[ed] at common law."

Plaintiff's position, which appears to be supported by at least the text of the remedy clause, runs counter to Supreme Court precedent. In the currently leading case, *Smothers*, the court began by identifying the question before it as whether the common law provided a remedy for negligently inflicted injury, but then went on to state, "Our next, more specific, inquiry is whether at common law in Oregon in 1857, an employee would have had a cause of action against an employer for failure to provide a safe workplace and failure to warn of dangerous working conditions to which the employee would be exposed." 323 Or at 129.

In any event, to the extent that existing cases do not precisely calibrate the level of generality at which to examine remedy clause challenges, such precision is not

necessary in this case. That is so because, even if plaintiff's challenge required analysis at a higher level of generality than the level advocated by defendant, the challenge would fail on another ground: Even if there had been a cause of action against alcohol purveyors for injuries sustained as a result of negligently served alcohol in first-party cases such as this one, the action would have been foreclosed by the well-settled doctrine of contributory negligence, if not also by assumption of the risk. Plaintiff argues that those doctrines are irrelevant here because our focus should be on whether the *injury* she sustained would have been recognized at common law and not on defenses that were available, but that position, again, cannot be reconciled with Supreme Court case law. Although the Supreme Court has never precisely held that a contemporary action is barred by the remedy clause because it would have been barred by contributory negligence in 1857, that is the clear implication of *Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007). In that case, the court held that, because the defendant would have been immune from an action at common law in 1857 due to sovereign immunity, a legislative limit on liability did not violate Article I, section 10. *Id.* at 600.

More to the point is *Howell v. Boyle*, 353 Or 359, 298 P3d 1 (2013). That case involved a challenge to a statutory limit on damages under the Oregon Tort Claims Act. *Id.* at 361. Although the court decided the case based on its conclusion that the substituted remedy was constitutionally adequate, thus obviating any need to discuss whether the plaintiff's cause of action was barred because at common law it would have been barred by contributory negligence, the court majority nonetheless provided extensive and detailed *dicta* addressing that question—which is, of course, the question presented by this case. *Id.* at 374, 381-88. The majority summarized the status of contributory negligence at the time that the Oregon Constitution was adopted:

> "[I]n the mid-nineteenth century, negligence claims were subject to the doctrine of contributory negligence, which operated as a complete bar to a plaintiff's recovery. *See generally Lawson* [*v. Hoke*], 339 Or [253, 262, 119 P3d 210 (2005)] (noting 'the indisputable proposition that, in the early years of this state's history, a plaintiff's contributory

negligence was an absolute bar to recovery for the negligent acts of another.')

*"Moreover, under the prevailing law at the time that the state's constitution was adopted, a plaintiff was required to prove not only that his or her injuries were caused by a defendant's negligence but also that his or her own actions did not contribute to those injuries. Contributory negligence, in other words, was a principle of causation that constituted a part of a plaintiff's burden of proof.*

"Although we are aware of no pertinent case law from the courts of this state dating precisely to the time of the adoption of the constitution, there are several cases dating to a few short years later that strongly suggest that Oregon's courts followed the established rule. *See Smothers,* 332 Or at 129 (relying on other-state and post-1870s case law to determine the state of negligence at the time of the adoption of the Oregon Constitution)."

*Id.* at 381-83 (footnotes omitted; emphasis added). The majority then discussed three Oregon cases decided shortly after the passage of the Oregon Constitution that strongly suggested that Oregon followed the established rule that contributory negligence was a complete bar to recovery and constituted part of a plaintiff's burden of proof, *id.* at 383-85, and concluded that the plaintiff—whom the jury found to have been 50 percent at fault—would have been entitled to recover nothing. *Id.* at 385.

As noted, this conclusion from *Howell* is pure *dicta,* but it would be imprudent for us to ignore it. It is recent, it is closely reasoned, and it is a response to an equally closely reasoned dissent by three members of the court. We therefore similarly conclude that the plaintiff in this case would not have had a cause of action in 1857 against defendant as her claim is pleaded. Plaintiff's counsel acknowledged as much during oral argument and in the brief on appeal: "There is no question that she played a role in causing her own injuries. However, it should remain for a jury to decide what proportion of fault, if any, also may be attributable to the conduct of [defendant] * * *." In 1857, because contributory negligence was a principle of causation that constituted a part of a plaintiff's burden of proof, plaintiff would have been required to prove not only that her injuries were caused by

defendant's negligence but also that her own actions did not contribute to those injuries. Plaintiff's claim would not have met that standard, and she would have been entitled to recover nothing. Thus, the bar on first-party negligence claims brought by intoxicated patrons against servers of alcohol in ORS 471.565(1) does not deprive plaintiff of the remedy guarantee in Article I, section 10, because she would have had no such claim in 1857. Therefore, the trial court did not err in granting defendant's motion to dismiss plaintiff's complaint.[7]

Affirmed.

---

[7] Because we conclude that plaintiff would not have had a common-law action against defendant in 1857, the limit on claims against alcohol servers in ORS 471.565(1) does not violate Article I, section 17, the guarantee of a jury trial in civil cases. *See Clarke*, 343 Or at 600 n 9; *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463 (1999) (Article I, section 17, "guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 * * *.").