814 October 31, 2024 No. 37

IN THE SUPREME COURT OF THE
STATE OF OREGON

Kerrie BONNER,
Personal Representative of the
Estate of David W. Bonner, Deceased,
*Plaintiff,*

*v.*

AMERICAN GOLF CORPORATION
OF CALIFORNIA, INC.,
dba Oregon Golf Club,
fdba The Oregon Golf Club, a foreign corporation;
and American Golf Corporation,
dba Oregon Golf Club, fdba The Oregon Golf Club,
a foreign corporation,
*Defendants.*

(United States District Court for the District of Oregon
No. 322cv01582SI)(SC S070183)

En Banc

On certified question from the United States District Court for the District of Oregon; certified order dated April 25, 2023, certification accepted May 18, 2023.

Argued and submitted September 14, 2023.

Rachel M. Jennings, Pickett Dummigan Weingart, LLP, Portland, argued the cause and filed the brief for plaintiff. Also on the briefs were J. Randolph Pickett, Shangar S. Meman, and Kyle T. Sharp.

Andrew J. Lee, Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause and filed the brief for defendants. Also on the brief were Jeffrey S. Eden, Sara Kobak, and Mario E. Delegato.

Lisa T. Hunt, Law Office of Lisa T. Hunt, LLC., Lake Oswego, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Alice S. Newlin, Lindsay Hart, LLP, Portland, filed the brief for *amicus curiae* Oregon Association of Defense Counsel. Also on the brief was Michael J. Estok.

MASIH, J.

The certified question is answered.

**MASIH, J.**

Servers of alcohol in Oregon have a duty not to serve alcohol to "visibly intoxicated" persons, but ORS 471.565(1) limits servers' liability in some circumstances even if the person is visibly intoxicated. Under that statute, "[a] patron or guest who voluntarily consumes alcoholic beverages served by [a licensed server or social host] does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated." In this case, which comes before us on a certified question of Oregon law from the United States District Court for the District of Oregon, we are asked to determine to what extent, if any, ORS 471.565(1) violates the remedy clause of Article I, section 10, of the Oregon Constitution. As we will explain, Oregon's common law has long held that a person has a remedy against the server of alcohol for injuries that the person suffered as a result of consuming alcohol involuntarily, meaning after the point that the person has lost the "sense of reason and volition." *See Ibach v. Jackson*, 148 Or 92, 35 P2d 672 (1934) (setting that standard). A statute that precluded such a recovery would violate the remedy clause. However, ORS 471.565(1), by its terms, does not reach that far. On the contrary, it bars a claim only by a person who "voluntarily consumes" alcohol. Accordingly, application of ORS 471.565(1) to bar a plaintiff's claim against a licensed server or social host does not violate the remedy clause of Article I, section 10, because it does not bar a claim by a person who involuntarily consumed alcohol served by a licensed server or social host.

## I. CERTIFIED QUESTION

In this case, plaintiff, a patron of a golf club that was hosting a golf championship, brought suit against defendants, the owners of the golf club, for, among other things, common-law negligence, based on allegations that he was served alcohol when he was visibly intoxicated and then fell off a golf cart and was seriously injured.[1] Defendants moved

---

[1] The case was originally filed by plaintiff's guardian *ad litem* in the Multnomah County Circuit Court in August 2022. In October 2022, defendants

to dismiss the complaint under FRCP 12(b)(6) for failure to state a claim, on the ground that plaintiff's claim is barred by ORS 471.565(1). Plaintiff responded that, to the extent that that statute barred his claim,[2] it deprived him of a remedy in violation of Article I, section 10.

With the consent of the parties, the district court certified the following question to this court:

> "Does ORS 471.565(1) violate the Remedy Clause of the Oregon Constitution, Article I, § 10, by denying a remedy to a plaintiff who sustains injury due to his or her own voluntary intoxication and who sues a licensed server or social host in their role as such?"

In its certification order, the district court noted that the Court of Appeals had held in 2017, in *Schutz v. La Costita III, Inc.*, 288 Or App 476, 478, 406 P3d 66 (2017) (*Schutz II*), *aff'd on other grounds*, 364 Or 536, 436 P3d 776 (2019) (*Schutz III*), that ORS 471.565(1) violated the plaintiff's constitutional right to a remedy.[3] In reaching that conclusion, the Court of Appeals relied on this court's then-recent decision in *Horton v. OHSU*, 359 Or 168, 218-19, 376 P3d 998 (2016). According to the Court of Appeals, the court in *Horton* held that a statute deprives a person of a remedy if the common law at the time that the statute was enacted

_____

removed the complaint to the United States District Court for the District of Oregon. Shortly thereafter, plaintiff died. In February 2023, plaintiff's ex-wife became the personal representative of plaintiff's estate, and, in that role, she was substituted as plaintiff in this case.

[2] Plaintiff's complaint also included a claim of negligence based on premises liability, a theory of liability that rests on a defendant's negligent conduct as a premises owner and operator. At oral argument, defendants agreed that a claim for premises liability would not fall within the scope of the immunity provided by ORS 471.565(1), which only bars claims based on the service of alcohol to a patron or guest.

[3] Four years earlier, in a case involving the same plaintiff but different defendants, the Court of Appeals held that ORS 471.565(1) *did not* violate the plaintiff's constitutional right to a remedy, because the plaintiff in that case would not have had a viable common-law negligence claim against the defendants when the Oregon Constitution was adopted. *Schutz v. La Costita III, Inc.*, 256 Or App 573, 302 P3d 460, *rev den,* 354 Or 148 (2013) (*Schutz I*). In *Schutz I*, the Court of Appeals relied on the remedy clause analysis set out in *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001) (concluding that a statute deprives a person of a remedy under Article I, section 10, only if the common law would have provided a remedy for the same type of claim in 1857, when the Oregon Constitution was adopted). This court overruled *Smothers* in part in *Horton v. Oregon Health & Sci. Univ.*, 359 Or 168, 376 P3d 998 (2016).

would have provided a remedy for the same type of claim. *Schutz II*, 288 Or at 485-88. The district court further noted that this court affirmed the Court of Appeals' decision in *Schutz II*, but on a different ground: We held that, given that the plaintiff's allegations of negligence against the defendants arose out of their roles as employer and supervisor and not out of their roles as servers or social hosts, the defendants were not entitled to statutory immunity under ORS 471.565(1) and, thus, it was unnecessary to resolve the constitutional question. *Schutz III*, 364 Or at 537.

Based on its reading of those cases, the district court certified the question to this court, stating:

> "Because the Oregon Supreme Court interpreted ORS 471.565 more narrowly in *Schutz* [*III*], it is ambiguous, at best, whether the constitutional analysis in *Schutz* [*II*] still applies. Thus, the precedential value of *Schutz* [*II*] is unclear and likely leaves this important question without controlling precedent from either the Oregon Court of Appeals or the Oregon Supreme Court. Final resolution by the Oregon Supreme Court would be helpful in resolving both counts of plaintiff's negligence claim and have broad legal consequence in the state and federal systems."

We accepted the certified question under ORS 28.200. However, we observe that the district court's question does not reflect the terms of ORS 471.565(1). The district court's question asks whether the statute is unconstitutional as applied to a "plaintiff who sustains injury due to his or her own voluntary intoxication and who sues a licensed server or social host in their role as such." However, ORS 471.565(1) does not use the term "voluntary intoxication"; it bars a claim by a patron who "voluntarily consumes alcoholic beverages" against a server for "injury, death, or damages caused by intoxication," "even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated."

This court has discretion to reframe a certified question. *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 370, 811 P2d 627 (1991); *McFadden v. Dryvit Sys., Inc.*, 338 Or 528, 532-33, 112 P3d 1191 (2005). The concepts of the voluntary consumption of alcohol and visible

intoxication are both found in the statute. Because both are necessary to our constitutional analysis but are distinct, we think it appropriate to slightly reframe the district court's question. We therefore exercise our discretion to modify the certified question as follows:

> "Does ORS 471.565(1) violate the Remedy Clause of the Oregon Constitution, Article I, section 10, by preventing a plaintiff who voluntarily consumes alcoholic beverages served to the plaintiff by a licensed server or social host when the plaintiff was visibly intoxicated and who sustains injury as a result from suing the licensed server or social host in their role as such?"

## II.  ANALYSIS

Before we commence our analysis of the constitutionality of ORS 471.565(1), we address a more general issue that defendants have raised in their brief to this court. Namely, defendants invite the court to revisit the meaning of the remedy clause. Defendants explain that, in *Horton*, this court considered itself constrained by its earlier decisions interpreting the remedy clause, and, therefore, it declined to "decide how we would interpret Oregon's remedy clause if we were considering it for the first time." *Horton*, 359 Or at 218. In a concurring opinion, Justice Landau urged the court to undertake a wholesale review of its remedy clause jurisprudence. *Id*. at 254-86 (Landau, J., concurring). Defendants now ask this court to align itself with Justice Landau's concurrence and hold that the remedy clause serves to "protect[] against executive and legislative interference with judicial independence and access to the courts"[4] and, conversely, that it was not intended to limit "the otherwise plenary authority of the legislature to determine rights and remedies." *Id*. at 286.

Although we appreciate defendants' thorough and thoughtful explication of the origins and history of the remedy clause, we decline their request to reconsider our

---

[4] Defendants ask us only to revisit the Article I, section 10, remedy clause analysis in *Horton*. Defendants do not advance any argument that the remedy clause analysis and the right to a jury trial may be interdependent and that, therefore, the court should also reassess *Horton*'s analysis under Article I, section 17, of the Oregon Constitution, along the lines proposed by Justice Landau in *Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 652, 468 P3d 419 (2020).

decision in *Horton*. In that case, the court took into account both the legislature's right to refine public policy set out in Article IV, section 1, and Article VIII, section 7, of the Oregon Constitution, and the right of injured Oregonians to access the courts under Article I, section 10, to obtain a remedy for an injury done them in their person, property, or reputation through a civil jury trial under Article I, section 17. *Horton*, 359 Or at 218-19. We find no fault with that approach.

In addition, defendants acknowledge that the path that they urge us to take necessarily would involve overruling all of our remedy clause cases decided before 2001. It is defendants' burden to establish that we must disavow our earlier cases. *See State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005) ("[T]he party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent."). Defendants have not met that burden here.

In *State v. Owen*, 369 Or 288, 302, 505 P3d 953 (2022), the court set out the various considerations that may lead the court to overrule precedent in statutory, common law, and constitutional cases. The court stated that litigants urging the court to overturn a case must consider *stare decisis* and the competing interests at stake; they must identify a deficit in the analytical process that the court used in that case to interpret the statute, common law, or constitutional provision at issue; they must show that, under a correct interpretation, the holding in that case was incorrect; and they must convince us that abandoning the holding in that case is prudent. *Id*. Defendants have not explained how those factors establish that the change in precedent that they urge is warranted. Moreover, we agree with Justice Balmer's statement in his concurring opinion in *Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 660-61, 468 P3d 419 (2020) (Balmer, J., concurring): "Oregon courts for more than 150 years have held * * * that the remedy clause imposes *some* kind of substantive limit on the extent to which the legislature may modify or abolish existing rights and remedies" and "[t]here is simply too much water under the bridge * * * to ignore or overturn so many of our cases." (Emphasis in original.)

For those reasons, we decline defendants' invitation to revisit the history and intent of the remedy clause in the manner requested, and we proceed to consider the constitutionality of ORS 471.565(1) in light of the *Horton* remedy clause analysis.

A.   *Remedy Clause Analysis Under* Horton

The "remedy clause" is part of Article I, section 10, of the Oregon Constitution, which provides:

> "No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and *every man shall have remedy by due course of law for injury done him in his person, property, or reputation*."

(Emphasis added.)

As discussed, in 2016, in *Horton*, this court reconsidered its approach to determining when a statute violates the remedy clause. The court overruled its decision in *Smothers* and adopted a paradigm for analyzing asserted remedy clause violations that focuses on the state of the common law at the time that the statute in question was enacted, not when the constitution was adopted. In so doing, the court explained that the text of the remedy clause "is as much about the availability of a remedy as it is about the 'due course of law' by which the remedy is to be administered." *Horton*, 359 Or at 180. And, the court stated, there is "no basis in the text of the remedy clause, its context, or its history from which we can conclude that the framers intended to limit the meaning of that clause to the concept of injury as it was defined in 1857."[5] *Id*. at 183. To the contrary, the court stated, "when the framers drafted the Oregon Constitution in 1857, they would have understood that the common law was not tied to a particular point in time but instead continued to evolve to meet changing needs." *Id*. Thus, the court stated, "common-law causes of action and remedies provide a baseline for measuring the extent to which subsequent legislation conforms

---

[5] In *Horton*, we traced the history of the remedy clause to the constitution of Indiana and back further through Blackstone's *Commentaries on the Laws of England* to Edward Coke's *The Second Part of the Institutes of the Laws of England* concerning Chapter 29 of the Magna Carta of 1225, which, in turn, derived from Chapter 40 of the 1215 version of the Magna Carta. 359 Or at 189-205.

to the basic principles of the remedy clause—ensuring the availability of a remedy for persons injured in their person, property, and reputation." *Id.* at 218.

The court in *Horton* recognized that legislation can affect a person's constitutional right to a remedy in different ways. It explained that, sometimes, legislation does not alter a duty that one person owes to another, but it eliminates an existing remedy for a person injured as a result of a breach of that duty or it provides only an insubstantial remedy for a breach of a recognized duty. *Id.* at 219. Statutes that fall into that category violate the remedy clause. *Id.* Sometimes, the legislation does not alter or eliminate an existing duty, but it adjusts a person's rights and remedies as part of a larger statutory scheme in which a *quid pro quo* may or may not be present for the altered right and remedy. *Id.* We have held that statutes that fall into that category may or may not violate the remedy clause depending on whether the alternative remedy is "substantial" in light of the overall statutory scheme and other factors, including but not limited to the existence of a *quid pro quo* to counterbalance the plaintiff's loss of a common-law remedy. *Id.* And finally, there may be situations where legislation modifies common-law duties or eliminates common-law causes of action, but the circumstances that required the imposition of those duties and the recognition of those causes of action have changed to such an extent that the interests that fueled the court's concern no longer require protection. *Id.* at 219-20. Statutes that fall into that category do not violate the remedy clause.[6] *Id.* The court stated that the court's grouping of legislation into those categories cannot be applied mechanically for purposes of a remedy clause analysis. *Id.* at 220. Rather, to determine whether "the legislature's actions impair a person's right to a remedy under Article I, section 10, we must consider the extent to which the legislature has departed from the common-law model measured against its reasons for doing so." 359 Or at 220.

---

[6] *See Horton*, 359 Or at 182 (citing as examples legislative abolishment of the common-law torts of criminal conversation and alienation of affections because those "actions for invasion of the family relationship were considered outmoded by changing views of marriage, divorce, and sexual relations" (citation and internal quotation marks omitted)).

Nothing in ORS 471.565(1) eliminates the duty that has existed since at least the early twentieth century not to serve alcohol to a "visibly intoxicated" person. That duty continues to exist and is currently reflected in multiple statutes, including ORS 471.315(1)(a)(H),[7] which subjects an Oregon Liquor and Cannabis Commission (OLCC) licensee who allows a visibly intoxicated person to consume alcohol on the licensed premises to various administrative consequences and penalties; ORS 471.410(1), which generally prohibits the provision of alcohol to a visibly intoxicated person; ORS 471.412(1), which prohibits an OLCC licensee from permitting a visibly intoxicated person to consume alcohol on the licenses premises; and ORS 471.565(2)(a), which provides that an OLCC licensee may be liable for damages caused by intoxicated patrons to third parties if the licensee served the patron when the patron was visibly intoxicated. In addition, there has been no suggestion that ORS 471.565(1) adjusts a person's rights and remedies as part of a larger statutory scheme or that the policy underlying the duty has no continuing purpose.[8] Thus, if ORS 471.565(1) falls into any *Horton* category, it is the first. Consequently, whether the legislature's enactment of that statute impairs a person's right to a remedy under Article I, section 10, the

---

[7] ORS 471.315 was amended during the 2024 regular legislative session. Or Laws 2024, ch 40, § 9. Because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

[8] The legislation would not fall into the *quid pro* quo, comprehensive scheme category, because the legislature has not provided some alternative remedy or *quid pro quo*. The inclusion of the second sentence in ORS 471.565(1)—stating that the statute is inapplicable to claims for relief based on negligent or intentional acts other than the service of alcohol—adds nothing that a plaintiff otherwise would not have had at common law. That sentence simply affirms that the legislation does not alter the common law of premises liability, which requires a proprietor to make its premises reasonably safe for its invitees. It has nothing to do with a proprietor's liability to a patron who suffers injury after having been served alcohol while visibly intoxicated.

The legislation also would not fall into the category in which the policy underlying the duty has no continuing purpose. To the contrary, the dangers inherent in over-service of alcohol were recognized by legislators during the process of enacting ORS 471.565(1), as demonstrated by the colloquy between certain legislators that we discuss below. Although the bill that became ORS 471.565(1) was ostensibly designed to procure some measure of personal responsibility on the part of the patron or guest whose voluntary conduct contributes to the injury, that interest was being served by the state's comparative fault system. That system allows a jury to compare the relative fault of a server and a patron in its apportionment of responsibility for a plaintiff's injuries.

issue boils down to whether ORS 471.565(1) eliminated an existing remedy for a person injured as a result of a breach of the server's duty not to serve alcohol to a "visibly intoxicated" person.

That, in turn, begs the question: How do we determine whether the "common-law model" provided a remedy for a breach of that duty at the time when the legislation was enacted? The Court of Appeals in *Schutz II* understood *Horton* to hold that, if a person would have had a common-law cause of action for negligence on the date that the statute eliminating that cause of action was enacted, then the statute would fall into the first category identified by the court in *Horton*, and it would be unconstitutional. 288 Or App at 485 (explaining that "it is the common-law causes of action and remedies that exist *at the time legislation is enacted*" that provide the baseline for measuring whether legislation unconstitutionally eliminates a common-law remedy (emphasis in original)). Defendants disagree with that interpretation. They point out that, in *Horton*, this court held that the *Smothers* court had "erred in holding that the remedy clause locks the courts and the legislature into a static conception of the common law as it existed in 1857." 359 Or at 218-19. Moreover, they argue that the court recognized that the remedy clause does not prevent the legislature from eliminating common-law actions or conditioning recovery on proof of new elements or avoidance of new defenses. *Horton*, 359 Or at 193-94, 209-10, 219. For those reasons, defendants argue that the legislature could, consistent with the remedy clause, eliminate an existing remedy that was not deeply rooted in the common law—meaning a remedy that had not traditionally been available to an injured person but rather had been more recently recognized by the court. According to defendants, in that circumstance, the statute should be seen as simply restoring the "traditional" common law.

Defendants further argue that that analysis applies to ORS 471.565(1). As we will explain in more detail below, what is now ORS 471.565(1) was enacted in 2001, in response to this court's decision in *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 330 Or 413, 427, 9 P3d 710 (2000), in which the court held that a "plaintiff may bring

a common-law negligence action against a person or entity that negligently supplied alcohol to the plaintiff when he or she already was visibly intoxicated and the plaintiff suffered injuries caused by that negligent conduct." Defendants contend that the court's holding in *Fulmer* does not represent the "common-law model," because, according to defendants, the court in that case allowed a claim that had *never* previously been recognized: a common-law negligence claim on behalf of a person who "voluntarily consumed" alcohol. Because *Fulmer* had been decided only a year before the legislature enacted ORS 471.565(1), defendants assert, the legislature's action should be seen as merely restoring the historic common-law prohibition on such claims.

Defendants are correct that, in rejecting the *Smothers* conception of the remedy clause, the court in *Horton* stated that the framers of our constitution would have understood that the common law is not tied to a particular point in time, "but instead continued to evolve to meet changing needs." 359 Or at 183. But beyond that, the court did not express a view about whether the constitutionality of the legislative change should be measured by considering only a single moment in time—whether a plaintiff had a cause of action for a similar injury at the time that the statute eliminating the cause of action was enacted—or whether the full sweep of the common law, from the founding of the state through the date of the legislation, must be considered to determine whether the right to a remedy was firmly rooted in the common law when the statute was enacted.

We do not need to resolve that issue in this case because, as we will explain, we conclude that ORS 471.565(1), as we interpret it here, is consistent with the common law as it had existed for decades prior to the statute's enactment. We begin our analysis by examining that statute to understand the types of causes of action that the statute precludes. *See State v. Ausmus*, 336 Or 493, 499, 85 P3d 864 (2004) ("Because we cannot address [the] constitutional challenges until we first discern the conduct that [the challenged statute] proscribes, we begin our analysis by construing that statute."). That analysis includes consideration of

the legislative history of the statute, which, in turn, necessitates a close examination of the state of the common law at the time, because, as noted, the statute was enacted in part in reaction to this court's decision in *Fulmer*.

B.   *Scope of ORS 471.565(1)*

To construe ORS 471.565(1), we apply the methodology set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009): We consider the text of the statute, its context, including other provisions of the same statute and related statutes, and any useful legislative history. *Id*.

1.   *Text and context of ORS 471.565(1)*

To repeat, ORS 471.565(1) provides, in relevant part:

> "A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon Liquor and Cannabis Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. The provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication[.]"

The plain words of that statute preclude a remedy for injury, death, or damages caused by intoxication only for those who have "voluntarily" consumed alcohol. Neither the word "voluntarily" nor "voluntary" is defined in the statute. The dictionary defines "voluntary," as relevant here, as "proceeding from the will **:** produced in or by an act of choice" and "of or relating to the will **:** subject to or regulated by the will." *Webster's Third New Int'l Dictionary* 2564 (unabridged ed 2002). In other words, a person acts voluntarily when the person makes a deliberate choice to perform an act, which, in turn, presumes that the person is capable of making a choice. Thus, a person who is injured as a result of choosing to consume alcohol is barred from suing the server of the alcohol. However, a patron or guest whose consumption of alcohol is *involuntary* is incapable of making a choice and continues to have a cause of action against the server.

In addition, the statute provides that a patron or guest whose intoxication was voluntary does not have a cause of action for injury, death, or damages even if the person was "visibly intoxicated" when being served. Thus, the legislature has expressly differentiated between visible intoxication and involuntary intoxication, meaning that the former does not necessarily imply the latter. Although the legislature has not defined "visibly intoxicated," statutes began using that term in 1933, when the legislature enacted a Special Session law that provided, among other things, that the Oregon Liquor Commission could cancel or suspend a liquor license if the licensee "knowingly has sold alcoholic liquor to persons *** known to be drunkards, to interdicted persons, or to persons visibly intoxicated at the time of sale." Or Laws 1933, ch 17, § 18 (2nd Spec Sess).[9] Similar wording eventually was incorporated into ORS chapter 471, regulating alcoholic liquors generally. As noted, those statutes impose a duty on providers of alcohol not to serve visibly intoxicated persons. *See, e.g.*, ORS 471.315(1)(a)(H); ORS 471.410(1); ORS 471.412(1); ORS 471.565(2)(a). But, again, none of those statutes defines the phrase "visibly intoxicated." Likewise, we are aware of no administrative rule that defines that term, although OAR 845-009-0135 requires servers to be trained to recognize visibly intoxicated persons.

As a matter of common parlance, "visible intoxication" can mean anything from appearing slightly tipsy to appearing incoherent or even immobilized. The OLCC has produced a list of 50 common signs of visible intoxication, which include disheveled clothing and boasting as well as

---

[9] As early as 1876, criminal statutes made it a crime to furnish alcohol to an "intoxicated person." *See, e.g.*, The Codes and General Laws of Oregon, ch VIII, title II, §1914 (Hill 1887) ("It shall be unlawful for any person to knowingly sell *** any spirituous or other intoxicating liquors *** to any intoxicated person, or to any person who is in the habit of becoming intoxicated[.]"). In 1913, the legislature enacted the first Dram Shop Act, imposing civil liability in some circumstances for serving or selling alcohol to minors and intoxicated persons. Oregon Laws 1913, ch 51 §1. Section 1 of the 1913 statute provided that a person who served alcohol to an "intoxicated person or habitual drunkard" was liable to the spouse, parent, and child of that person for damages resulting from the service of alcohol to that person. *Id*. § 1. Dram Shop Acts in various iterations continued to exist until 1979, when *former* ORS 30.730 (1977) was repealed by Or Laws 1979, ch 801, section 4. None of those statutes defined "intoxicated" or described the level of intoxication that would trigger a server's criminal or civil liability.

disorientation and falling off chairs.[10] At one end of the spectrum, a visibly intoxicated person may be consuming alcohol "voluntarily." At the other end, the patron or guest may no longer be capable of making reasoned decisions, and further consumption of alcohol beyond that point may not be truly voluntary. The wording of ORS 471.565(1) reflects that the fact that a person is "visibly intoxicated" does not necessarily mean that that person's consumption of alcohol was involuntary.

We have stated that context includes this court's interpretations of the statute at issue. *Liberty Northwest Ins. Corp. v. Watkins*, 347 Or 687, 692, 227 P3d 1134 (2010). This court has not previously considered the precise question before us today. As discussed, in *Schutz II*, the Court of Appeals held that ORS 471.565(1) denied the plaintiff there a remedy in violation of Article I, section 10, but on review, this court affirmed for a different reason. *Schutz III*, 364 Or at 538. We held that ORS 471.565(1) provides immunity for servers and social hosts only for their conduct in their roles as servers and social hosts and that, although the defendants in *Schutz III* were social hosts, the plaintiff's specifications of negligence were based on the defendants' alleged roles as the plaintiff's employer and supervisor and not on their roles as servers of alcohol. The court therefore concluded that the defendants were not immune from liability for their tortious conduct, if any, in those roles. *Id.* at 556. In so holding, this court did not endorse the Court of Appeals' conclusions in *Schutz v. La Costita III, Inc.*, 256 Or App 573, 302 P3d 460, *rev den*, 354 Or 148 (2013) (*Schutz I*), and in *Schutz II* that the plaintiff's consumption of alcohol had been voluntary. In fact, it did not consider or interpret the terms "voluntarily" or "visibly intoxicated" as they are used in ORS 471.565(1).[11]

---

[10] Oregon Liquor and Cannabis Commission, 50 Signs of Visible Intoxication (Rev 2022), https://www.oregon.gov/olcc/docs/publications/50_signs_visible_intoxication.pdf (accessed October 22, 2024).

[11] To the contrary, the court expressly noted that, if the bar "had a duty to act affirmatively to protect [the] plaintiff from harm, *a question we do not address*, that duty, as alleged, could arise only from its role in having served alcoholic beverages to [the] plaintiff after she became visibly intoxicated." *Id.* at 555 (emphasis added).

### 2. *Legislative history*

We turn to the legislative history. As we have noted, the history of the enactment of ORS 471.565(1) starts in 2000, with this court's decision in *Fulmer*, because the following year, in response to that decision, the legislature proposed Senate Bill (SB) 925 (2001), which eventually became ORS 471.565(1).

#### a. This court's decision in *Fulmer* and the cases on which *Fulmer* was based

In *Fulmer*, the plaintiffs, husband and wife, sought recovery from the defendants, the owners of a bar, for injuries that the husband sustained in a fall on the defendants' premises after having been served alcohol when he was intoxicated. 330 Or at 416. The plaintiffs alleged eight claims for relief, including, among others, common-law negligence based on the defendants' service of alcohol to the husband. *Id*. The complaint alleged that the defendants "caus[ed] plaintiff * * * to become poisoned with alcohol, to lose his sense of reason and volition; and * * * knowing plaintiff * * * was in such condition and visibly intoxicated, continu[ed] to ply plaintiff * * * with alcohol * * *." *Id*. at 419 (internal quotation marks omitted). The defendants in that case argued that Oregon law did not recognize a common-law claim in favor of a person whose injury results from the person's own consumption of alcohol. *Id*. In support of that argument, the defendants cited *Miller v. City of Portland*, 288 Or 271, 279, 604 P2d 1261 (1980) (so stating), and *Sager v. McClenden*, 296 Or 33, 35, 672 P2d 697 (1983) (same). In response, the plaintiffs contended that the court had recognized such a claim in 1934, in *Ibach*. The court agreed with the plaintiffs, concluding that *Ibach* controlled and that the court's reasoning in *Miller* and *Sager* was not persuasive. *Fulmer*, 330 Or at 425-26.

*Ibach* was a wrongful death action in which the plaintiff, the administrator of the decedent's estate, filed a complaint alleging that the defendant had enticed the decedent to go to his hotel room and then "wrongfully and unlawfully served [the decedent] large quantities of intoxicating alcoholic liquors * * * and induced her, * * * to drink

the same in large quantities sufficient to and which did cause her to become ill and to suffer from acute alcoholism," causing her death. 148 Or at 94-95. The plaintiff later filed an amended complaint that repeated the allegations in the original complaint and further alleged that defendant:

"wilfully, unlawfully, and wrongfully forced [the decedent] to partake of intoxicating liquors to such an extent that she lost her sense of reason and volition *** and while in a state of intoxication and unable to control her own action and movements *** [she sustained various injuries], and thereafter, the defendant carelessly and negligently left [the decedent] while she was in said condition in said hotel room alone, where she died sometime during the night, as a direct and proximate result thereof."

*Id.* at 95-96. The trial court granted the defendant's motion to strike the amended complaint, and it issued a judgment in favor of the defendant.

On the plaintiff's appeal, this court held that the trial court had erred in striking the amended complaint. The court stated:

"[I]t is wrongful for any person repeatedly and continuously to ply another person with intoxicating liquor until intoxication is produced. An action by a woman so mistreated could be maintained unless by voluntary participation therein she could herself be said to be at fault. It is alleged in the amended complaint, as it may be inferred from the original complaint, that after decedent lost her sense of reason and volition, defendant continued to administer liquor to her. If decedent had survived such an indignity, she would have had a right of action against defendant for such damages as she sustained thereby."

*Id.* at 102-03.

The defendant petitioned for a rehearing, objecting to one of the inferences that the court drew from the allegations in the complaint: namely, that, "after decedent lost her sense of reason and volition, defendant continued to administer liquor to her." *Id.* at 107. On rehearing, this court adhered to its previous decision. The court explained that, given the procedural posture of the case—defendant having filed an answer to the complaint months earlier—the

court was required to draw inferences favorable to the plaintiff and "it [was] clearly inferable from the language of the complaint quoted in the original opinion herein that part of the liquor was given decedent before, and part of it after, she had passed the crucial period of transition from conscious volition" to a loss of reason and volition. *Id*. at 108. Ultimately, the court held:

> "To say that the administration of liquor in such large quantities as to cause death is not a breach of the duty which one human being owes to every other human being with whom he comes in contact, namely, the duty to observe ordinary care to prevent injury, is to shock the fundamental and rudimentary principles of decency and order. For this reason[,] we hold that a breach of duty was so pleaded in the original complaint. The same breach of duty is alleged in the amended complaint."

*Id*. at 112.

After summarizing the court's decision in *Ibach*, the court in *Fulmer* concluded:

> "Thus, in *Ibach*, this court recognized the claim that plaintiffs bring in this case, namely, a common-law claim in favor of an intoxicated person on the theory that the defendant negligently had served alcohol to the person. Defendants' argument that there is no prior case law holding that a common-law negligence claim exists in favor of an intoxicated person under such circumstances is incorrect."

330 Or at 421. The court rejected the defendants' argument that *Ibach* was distinguishable because the plaintiff in *Ibach* was "forced" to consume alcohol, whereas the plaintiff in *Fulmer* "voluntarily" participated in his alcohol consumption. *Id*. The court observed that, in *Ibach*, the court had clarified that the allegation in the amended complaint concerning the defendant's use of force was immaterial: "'Whether constructive force or actual force, or no force at all was employed, the violation of duty is shown by the facts alleged[.]'" *Id*. (quoting *Ibach*, 148 Or at 111). The court stated that, similarly, the fact that the defendants in *Fulmer* did not "force" the plaintiff to consume alcohol did not mean that the plaintiff had not alleged facts sufficient to state a claim for negligence. *Id*. In other words, the fact

that the plaintiff had not been forced to consume alcohol did not mean that the plaintiff's consumption of alcohol was voluntary.

The court then turned to its earlier decisions in *Miller*, in which the court stated that this court had "never previously recognized a common-law cause of action in favor of a person who suffers injury resulting from his or her own consumption of alcohol," 288 Or at 279, and *Sager*, in which the court repeated that statement, *Sager*, 296 Or at 35.

In *Miller*, one of the issues presented was whether the defendant tavern owners could be held liable to a minor who was injured as a result of having been served alcohol when she was visibly intoxicated. 288 Or at 273. In that case, the defendants had served alcohol to two minors without requiring proof of their age and continued serving them alcohol after both minors were visibly intoxicated. The minors left the tavern on a motorcycle and were struck by a City of Portland police car. *Id*. at 273. One of the two minors—the passenger—was injured in the collision and sued the City of Portland for personal injuries. *Id*. After the city settled with the plaintiff, the city impleaded the tavern owners as third-party defendants, seeking contribution from them on the ground that they were also responsible for the accident. *Id*. Among other things, the complaint against the tavern owners alleged a common-law negligence cause of action based on allegations that the defendants had served the plaintiff alcohol when she was visibly intoxicated and that she was injured as a result. *Id*.

On review, this court declined to recognize a common-law negligence claim for physical injury to a person caused by the person's own illegal purchase and consumption of alcohol. *Id*. at 279. In so doing, the court did not cite *Ibach*. Rather, the court stated that "[t]his court has never previously recognized a common law cause of action in favor of a person who suffers injury from his or her own consumption of alcohol." *Id*.

The court then stated that it would be inappropriate to create such a cause of action for two reasons. First, recognizing a negligence claim "for physical injury to minors

caused by their illegal purchase of alcoholic liquor" would be "contrary to apparent legislative policy."[12] *Id*. And second, the court stated that, at the time of the collision, the Dram Shop Act, *former* ORS 30.730 (1977), *repealed by* Or Laws 1979, ch 801, § 4, was in effect in Oregon, and that statute provided that a person who served alcohol to "any intoxicated person or habitual drunkard" was liable for resulting damages in an action brought by the wife, husband, or child of the intoxicated person. *Miller*, 288 Or at 280. The court explained that that statute did not include the intoxicated person among the individuals legislatively entitled to relief, and, because the legislature had "considered the liability to the inebriate's immediate family *** but [had] refrained from giving [the intoxicated person] a cause of action, we conclude it is probable it must have considered the matter and rejected any cause of action for [the intoxicated person]." *Id*.

In *Fulmer*, the court dismissed *Miller*'s reliance on the Dram Shop Act as a basis for refusing to "create" a common-law claim. 330 Or at 422. Among other things, the court noted that it had previously held, in *Wiener v. Gamma Phi, ATO Frat.*, 258 Or 632, 638 n 2, 485 P2d 18 (1971), that the legislature did not intend for the Dram Shop Act to be the sole remedy against persons who had provided alcohol to others. *Fulmer*, 330 Or at 424. The court recognized that *Miller* and *Ibach* had reached different results with respect to first party negligence claims, but it noted that *Miller* did not expressly overrule *Ibach*. *Id*. at 424. The court also concluded that *Miller* did not overrule *Ibach sub silentio*:

> "We acknowledge, at the outset, that the court in *Miller* went further than simply failing to mention *Ibach*—it affirmatively asserted that this court *never* had recognized a first-party claim in these circumstances—an assertion that patently was inaccurate. Second, not only was *Miller* incorrect in its characterization of the state of the law, the court based its entire analysis concerning the plaintiff's first-party negligence claim on that faulty premise. Third,

---

[12] Context suggests that, by "apparent legislative policy," the court was referring to ORS 471.430 (1979) (making purchase and consumption of alcohol by minors illegal) and the notion that it would be "inconsistent with apparent legislative policy to reward the violator with a cause of action based upon [the] conduct which the legislature has chosen to prohibit and penalize." *Miller*, 288 Or at 279 (applying similar reasoning to reject the plaintiff's negligence *per se* claim).

and finally, we note that the court in *Miller* predicated its refusal to 'create *** a common law cause of action for the benefit of the intoxicated person' solely on its mistakenly narrow reading of the Dram Shop Act [*former* ORS 30.730 (1977)]. *** Accordingly, absent legislative or judicial abrogation, the common-law rule established in *Ibach* was in effect when this court decided *Miller*."

*Id.* (emphasis in original).[13]

The court then turned to *Sager*, where the court cited *Miller* and again stated that "'Oregon never has recognized a common law claim against alcohol providers in favor of a person who suffers injury resulting from his or her own intoxication.'" *Fulmer*, 330 Or at 425 (quoting *Sager*, 296 Or at 35). The *Fulmer* court explained that not only was that statement inaccurate in light of the court's earlier decision in *Ibach*, it also was a *dictum*, because the sole issue presented in *Sager* was whether *former* ORS 30.950 (1983), *renumbered as* ORS 471.565 (2001) (providing that licensee who served alcohol to a visibly intoxicated patron was liable for damages caused by that patron off the licensee's business premises) authorized a claim by an intoxicated person against a person who served the person alcohol when the person was visibly intoxicated. *Id.* In other words, the plaintiff's claim in *Sager* was based on negligence *per se*, and therefore, the court stated, the court's holding in that case had no bearing on the issue presented in *Fulmer. Id.*

Finally, the court rejected the defendant's argument that the court should not "create"[14] a negligence claim

_____

[13] The court in *Fulmer* did not remark on *Miller*'s apparent reliance on the fact that the minor was engaged in illegal activity when she was injured or the fact that the plaintiff in *Miller* had not alleged that she was served alcohol after she had lost her sense of reason and volition. Those considerations distinguish *Miller* from *Ibach*, and, thus, the court in *Fulmer* was incorrect to suggest that the court had reached different results under similar circumstances in those cases. Nonetheless, we agree with the court in *Fulmer* that the *Miller* court's assertion that this court "never previously recognized a common law cause of action in favor of a person who suffers injury resulting from his or her own consumption of alcohol" was inaccurate, because the plaintiff in *Ibach* was injured as a result of "her own consumption of alcohol" and the court recognized her common-law cause of action in that case.

[14] The court did not accept the defendants' characterization of its recognition of a common-law negligence cause of action in the circumstances of the case as the "creation" of such a cause of action. Rather, as discussed, it understood that such a common-law cause of action already existed, and, when referring to the defendants' arguments against the creation of a claim on behalf of an injured

on behalf of an intoxicated patron because a person whose voluntary act resulted in injury should be responsible for that injury. *Id.* at 426. The court stated that defendants, "in effect ask us to rule that plaintiff's 'participation' in the 'condition' that led to his injuries should lead to the dismissal of a common-law claim in his favor—a ruling that would revive by court decision the doctrines of contributory fault and assumption of the risk that the legislature has abolished." *Id.* The court rejected that invitation, stating that its decision did "not relieve intoxicated patrons of their own responsibility to act reasonably to take care of themselves." *Id.* at 427. Rather, the court explained, "[u]nder the comparative fault statute, a properly instructed jury may reduce significantly or negate any recovery when the plaintiff's own unreasonable conduct has contributed to the plaintiff's injuries."[15] *Id.*

---

intoxicated person, it put the words "create" and "creation" in quotation marks. *Fulmer,*330 Or at 421, 422, 426.

[15]    The court was referring to the 1971 legislative adoption of the statutory defense now referred to as "comparative fault," under which the amount of damages that a plaintiff can recover in a negligence action is reduced based upon the degree to which the plaintiff's own negligence contributed to cause the injury. Or Laws 1971, ch 668, § 1 (enacting what is now ORS 31.600). Notably, the year before the legislature's adoption of comparative fault, this court was urged to judicially abolish the common-law rule of contributory negligence and adopt the doctrine of comparative fault. The court declined; it concluded that the issue whether to abandon contributory negligence and adopt a form of comparative fault was one of public policy and was the type of determination best made by the legislature. *Peterson v. Culp*, 255 Or 269, 270, 465 P2d 876 (1970). With the enactment of *former* ORS 18.470 (1971), *renumbered as* ORS 31.600 (2003), the legislature made that determination.

Plaintiff in this case raises an argument that is the inverse of the defendants' argument in *Fulmer*, which the court rejected; he argues that applying ORS 471.565(1) to bar an injured person's claims when they are caused at least in part by voluntary intoxication effectively bars recovery based on the person's contributory negligence. Plaintiff argues that interpreting ORS 471.565(1) in that way effectively resurrects the doctrine of contributory negligence, which, as we have explained, the legislature abandoned in 1971, and is contrary to the intent of the legislature in enacting ORS 471.565(1). *See* Testimony, House Committee on Judiciary, Subcommittee on Civil Law**,** SB 925, May 14, 2001, Ex E (written statement of Bill Perry, Director of Government Relations for the Oregon Restaurant Association)("SB 925 is not a bill that changes Oregon's comparative negligence laws or revives a contributory negligence or assumption of risk standard."). However, the question whether our interpretation of ORS 471.565(1) is consistent with the doctrine of comparative fault is outside the scope of our inquiry here, which is concerned with whether that statute deprives a person of a remedy in violation of Article I, section 10, and we leave that question for another day.

Ultimately, the court in *Fulmer* held that "absent legislative or judicial abrogation, the common-law rule established in *Ibach* was in effect when this court decided *Miller*" and that "*Ibach* remain[ed] an accurate statement of the common-law rule in Oregon." *Fulmer*, 330 Or at 424, 425. It allowed the plaintiffs' negligence claim to proceed.

    b.   Legislative reaction to *Fulmer*

The following year, in 2001, the Oregon Restaurant Association sponsored SB 925 in reaction to the court's decision in *Fulmer*. The association described the bill, in relevant part, as "legislation to ensure that an establishment is not liable if customers who consume alcohol under their own free-will injure themselves." Testimony, Senate Committee on Judiciary, SB 925, Mar 13, 2001, Ex A (written statement of Bill Perry, Director of Government Relations for the Oregon Restaurant Association). Among other things, SB 925 provided that a person who voluntarily consumes alcohol does not have a common-law cause of action in negligence or negligence *per se* against the server of the alcohol, even if the person was visibly intoxicated when served.[16] That part of SB 925 was codified at ORS 471.565(1).

---

[16]    SB 925 also was prompted, in part, by this court's decision in *Grady v. Cedar Side Inn, Inc.*, 330 Or 42, 997 P2d 197 (2000), *abrogated in part by Deckard v. Bunch*, 358 Or 754, 370 P3d 478 (2016), which was decided four months before the court decided *Fulmer*. In *Grady*, the court held that a plaintiff who was injured by the actions of an intoxicated person may bring a common-law negligence action against the person or entity who furnished the alcohol to the intoxicated person, even if the plaintiff contributed to the intoxication by purchasing the alcohol for the intoxicated person. *Id*. at 50. The bill abrogated the court's decision in *Grady* by providing that a plaintiff does not have a cause of action against a person who served alcohol to a visibly intoxicated person for injuries caused by the intoxicated person unless the plaintiff proves by clear and convincing evidence, that, among other things, the plaintiff did not contribute to the person's intoxication. That provision was codified at ORS 471.565(2). In addition, during the legislative process, legislators amended SB 925 to add a second sentence to the provision addressing the court's decision in *Fulmer*, which was designed to leave intact the part of the court's holding in *Fulmer* addressing premises liability. Tape Recording, House Committee on Judiciary, SB 925A, May 23, 2001, Tape 69, Side A (statement of Bill Perry, Director of Government Relations for the Oregon Restaurant Association). In *Fulmer*, the court had found that the plaintiff had pleaded facts sufficient to establish a common-law claim for premises liability because, "it is well-established in Oregon that a proprietor's obligation to make its premises reasonably safe for its invitees includes taking into account the use to which the premises are put" and "one of the primary purposes of defendants' invitation to their tavern is the consumption of alcohol by customers, [so] defendants [are] obligated to make their premises reasonably safe

        The legislative history of ORS 471.565(1) reveals that the legislature's express purpose in enacting that provision was to eliminate the common-law cause of action that it understood the court to have recognized in *Fulmer*. In testimony before the House Judiciary Committee, a representative of the Oregon Restaurant Association told the committee that "[t]he court in [*Fulmer*] recognized that the legislature has the power to abolish rules of the common law by statute and that is what SB 925 seeks to do."[17] Testimony, House Committee on Judiciary, SB 925, May 14, 2001, Ex E (written statement of Bill Perry, Director of Government Relations for the Oregon Restaurant Association). During a hearing of the House Judiciary Committee, members of the committee discussed the effect of the proposed statute on first-party claims:

> "REPRESENTATIVE V. WALKER:  * * * [S]o here's the scenario that I've got in my mind. You're in a bar drinking. The bartender does not cut you off and you are visibly intoxicated, which I think there is some liability there. But anyway, you get in your own car and you drive home and you smash your car and you die. Is—your estate cannot sue the bar.
>
> "REPRESENTATIVE SHETTERLY:   Right.
>
> "REPRESENTATIVE V. WALKER:   Is that what this bill would be?
>
> "REPRESENTATIVE SHETTERLY:   That would be the effect of it.
>
> "REPRESENTATIVE V. WALKER:   So there's no liability on the part of the bartender to stop serving you alcohol at some point?
>
> "REPRESENTATIVE SHETTERLY:   Mr. Chair?
>
> "CHAIR WILLIAMS:   Yes.

---

in light of that purpose." *Id*. at 429. The second sentence of ORS 471.565(1) thus clarifies that that provision does not apply to claims for relief that are based on negligent or intentional acts other than the service of alcohol to a visibly intoxicated patron or guest.

[17] *See Fulmer*, 330 Or at 424 (noting that "the legislature may abrogate rules of the common law by statute"). Of course, those changes must still comply with Article I, section 10.

"REPRESENTATIVE SHETTERLY:   I would bet that in most cases this is not a problem, because I would expect that the bar owner is going to be a lot more concerned about your risk of harm to *** third persons. So this is not going to *** to create an incentive for bar owners to serve people in an intoxicated state.

"REPRESENTATIVE V. WALKER:   Right.

"REPRESENTATIVE SHETTERLY:   And clearly it's not, because the greater risk is they're going to go out and hurt somebody else, in which case then the bar owner is still going to be liable. But I think to the extent that this recognizes some element of personal responsibility for damages that you cause to yourself through your own voluntary intoxication, I think it's a fair balancing."

Tape Recording, House Committee on Judiciary, SB 925, May 23, 2001, Tape 69, Side A. The staff measure summaries for the bill and a legal analysis accompanying the Oregon Restaurant Association's statement support the committee members' understanding of the bill's purpose and effect. *See* Exhibit A, Senate Committee on Judiciary, SB 925, Mar 13, 2001 (legal analysis by Mills & McMillin, PC, accompanying statement of Bill Perry, Director of Government Relations for the Oregon Restaurant Association); Staff Measure Summary, House Committee on Judiciary, SB 925, May 25, 2001; Staff Measure Summary, Senate Committee on Judiciary, SB 925, Mar 19, 2001.

Thus, the legislative history shows that ORS 471.565(1) was intended to eliminate a cause of action in negligence that the legislature understood to have been created by *Fulmer*, a claim by or on behalf of a person who was injured as a result of the person's voluntary consumption of alcohol, against the person or entity who served the person the alcohol, even if the person was served when visibly intoxicated.

C. *Did the Legislature, in Enacting ORS 471.565(1), Eliminate a Remedy That the Common Law Had Recognized?*

In deciding whether a statute violates the remedy clause, *Horton* asks us to "consider the extent to which the legislature has departed from the common-law model,

measured against its reasons for doing so." 359 Or at 220. As we have demonstrated, the legislature believed that it was departing from the common-law model set out in *Fulmer* when it enacted ORS 471.565(1), and its reason for doing so was a concern that bar and restaurant owners and servers were bearing liability for patrons' and guests' voluntary consumption of alcohol. We turn to examine whether and to what extent ORS 471.565(1) departed from the common-law model.

1. *Defendants' argument that the court in Fulmer created a new cause of action*

As we have stated, ORS 471.565(1) was intended to and does bar a negligence claim against a server of alcohol based on a person's *voluntary* consumption of alcohol, even if the person was visibly intoxicated when served. Defendants, like the legislature that enacted ORS 471.565(1), understand *Fulmer* to have created a first-party negligence claim based on a person's voluntary consumption of alcohol, and they argue that this court should not treat that claim as part of the "common-law model" in determining whether the statute eliminating such a claim violates the remedy clause, because the right to a remedy for such a claim was not firmly rooted in the common law when the statute was enacted.

Specifically, defendants argue that, notwithstanding the court's conclusion to the contrary in *Fulmer*, the court had never recognized a cause of action based on the plaintiff's voluntary intoxication before it decided *Fulmer*. They contend that, in *Ibach*, the court recognized that, if a plaintiff "voluntarily participates in the wrongful act and by such participation contributes to the cause of the damage sustained, an action cannot be maintained." 148 Or at 98. Similarly, they note that the court in *Ibach* had stated that a woman who had been plied with alcohol "until intoxication is produced" could maintain an action against the person who furnished the alcohol, "unless by voluntary participation therein she could herself be said to be at fault." *Id*. at 102-103. But, according to defendants, that is not how the court described what happened in *Ibach*:

"It is alleged in the amended complaint *** that *after decedent lost her sense of reason and volition*, defendant continued to administer liquor to her. If decedent had survived

> such an indignity, she would have had a right of action against defendant for such damages as she sustained thereby."

*Id*. at 103 (emphasis added). In other words, defendants contend that the court in *Ibach* held that a plaintiff had a common-law cause of action for injuries sustained as a result of intoxication only if the plaintiff's consumption of alcohol was *involuntary*. Only in such a case must the person "imposing the draught upon him * * * answer in damages for the injury that ensues." *Id*. at 104 (citation and internal quotation marks omitted).

Defendants argue that, unlike in *Ibach*, the plaintiff's consumption of alcohol in *Fulmer* was voluntary, and, thus, in allowing a person harmed by his or her own voluntary intoxication to pursue claims for injuries caused by that intoxication, the court in *Fulmer* recognized a cause of action that had not previously existed. It follows, they argue, that the remedy that the court in *Fulmer* recognized was not deeply rooted in the common law, and, in enacting ORS 471.565(1) to eliminate that remedy only a year later, the legislature merely restored the "traditional" common law. For that reason, defendant's contend, that statute does not violate the remedy clause of Article I, section 10, of the Oregon Constitution.

Defendants are correct that the court in *Ibach* recognized a cause of action against a server of alcohol for injuries sustained as a result of intoxication only when the plaintiff's conduct was involuntary, but defendant's argument that *Fulmer* involved the plaintiff's *voluntary* intoxication is incorrect. As noted, the court in *Fulmer* stated that the plaintiffs' common-law negligence claim alleged that the defendants were negligent in "causing plaintiff * * * to become poisoned with alcohol, to *lose his sense of reason and volition*; and * * * knowing plaintiff * * * was in such condition and visibly intoxicated, continu[ing] to ply plaintiff * * * with alcohol[.]" 330 Or at 419 (emphasis added; internal quotation marks omitted). In other words, the plaintiffs' allegation of negligence in *Fulmer* was identical in material respect to the allegation that the court in *Ibach* found to have stated a cause of action. Thus, as in *Ibach*, the plaintiffs in *Fulmer*

alleged that the husband's consumption of alcohol, leading to his injury, was *involuntary*.

Nonetheless, we recognize that the court in *Fulmer* described the issue presented in the case as "whether a common-law negligence claim exists in favor of an intoxicated person who suffered injury on the premises of an establishment against the server or establishment that supplied alcohol to the injured person when the person was *visibly intoxicated*." *Id*. at 419 (emphasis added). Likewise, in conclusion, the court stated, "We hold that a plaintiff may bring a common-law negligence action against a person or entity that negligently supplied alcohol to the plaintiff when he or she already was *visibly intoxicated* and the plaintiff suffered injuries caused by that negligent conduct." *Id*. at 427 (emphasis added). As we will explain, those statements sweep more broadly than was required of the court given the facts of the case.

The court in *Fulmer* had expressly emphasized (1) that the court's holding in *Ibach* was based on its finding that the defendant had served the plaintiff alcohol after she had "lost her sense of reason and volition" and (2) that the plaintiffs in *Fulmer* had alleged that the husband also had been served alcohol after he had "los[t] his sense of reason and volition." Thus, *Ibach* required, and the complaint in *Fulmer* alleged, that the plaintiff's consumption of alcohol was not voluntary; the plaintiff in *Fulmer* had been served alcohol after he had, in the words of the court in *Ibach*, "passed the crucial period of transition from conscious volition" to a loss of reason and volition. *Ibach*, 148 Or at 108. The plaintiff in *Fulmer* therefore had a cause of action in negligence against the server under *Ibach*.

However, in discussing its reasoning, *Fulmer*, rather than referring to the voluntariness of a person's consumption of alcohol, referred to the person's "visible intoxication." As we have stated, neither the legislature nor this court has ever defined the term "visible intoxication," and, in common parlance, that term does not necessarily encompass the loss of a sense of reason and volition that the court described in *Ibach*.[18] Thus, in stating that liability could be

_____

[18] However, it should go without saying that a person who has lost the sense of reason and volition will show signs of visible intoxication.

imposed based solely on the service of alcohol to a "visibly intoxicated" person—and thereby including circumstances in which the person's consumption of alcohol may be voluntary—the *Fulmer* court's description of its holding encompasses circumstances not presented by the facts of the case or justified by the court's earlier case law.[19]

Nonetheless, we do not see *Fulmer* as announcing a new common-law standard. Indeed, as noted, the court purported to be following *Ibach*. Rather, it appears to us that the court was attempting to accommodate the fact that, since *Ibach* had been decided, the legislature had abrogated the doctrines of contributory negligence and assumption of risk and replaced them with a comparative fault scheme that weighed the extent to which a person's own negligence contributed to the injury. Thus, in referring to "visible" rather than "voluntary" intoxication, the court in *Fulmer* seemed to be suggesting that, with the adoption of comparative fault, the distinction between voluntary and involuntary intoxication was less important. For those reasons, we understand *Fulmer* simply as recognizing that the statutory landscape had changed since the court first recognized a first-party negligence claim based on a plaintiff's consumption of alcohol, rather than as breaking new ground and creating a new common-law cause of action.

## 2. *Application of* Horton *to ORS 471.565(1)*

As we mentioned earlier, the court explained in *Horton* that legislation that affects a person's right to a remedy under Article I, section 10, generally falls into one of three categories, and the constitutionality of the legislation in each category depends on the extent to which the legislation alters an existing duty, eliminates an existing remedy, provides a substantial alternative remedy including, among other things, by providing a *quid pro quo*, or was intended

---

[19] We also note that, in concluding that the plaintiffs had alleged facts that stated a viable negligence claim, this court did not necessarily endorse all of the plaintiff's allegations of negligence. Rather, the court held that the trial court erred in granting the defendant's motion to dismiss because the plaintiffs had alleged that the defendant's service of alcohol to the plaintiff "caus[ed the] plaintiff *** to lose his sense of reason and volition; and [that,] *** knowing plaintiff *** was in such condition *** [the defendant] continu[ed] to ply [the] plaintiff *** with alcohol," an allegation that gave rise to a viable claim under *Ibach*. *Fulmer*, 330 Or at 419 (internal quotation marks omitted).

to protect an interest that no longer needs to be protected. The court stated in *Horton* that those categories cannot be applied mechanically; rather, we must consider the extent to which the legislature has departed from the common law. 359 Or at 220.

We turn to consider whether or how *Horton* applies to ORS 471.565(1). Once again, that statute bars a claim by a person who is injured as a result of the voluntary consumption of alcohol, even if the person was visibly intoxicated when served, and nothing in that statute eliminates the duty that has existed since at least the early twentieth century not to serve alcohol to a visibly intoxicated person. Thus, the question before the court is whether ORS 471.565(1) eliminated a common-law remedy for a violation of that duty in that circumstance.

As we have explained, this court has never held that a person who contributes to their own intoxication by voluntarily consuming alcohol, and is injured as a result, has a common-law right to recover in negligence from the person who served the alcohol. Therefore, to the extent that the term "visibly intoxicated" in ORS 471.565(1) encompasses something less than having lost the sense of reason and volition, which would render the person's intoxication *involuntary*, that statute does not eliminate a remedy for a breach of an existing duty. It follows that, in that situation, the statute does not fall into any of the three categories that the court identified in *Horton*, and it does not violate the remedy clause of Article I, section 10.

However, a different question would be presented with respect to a server who serves alcohol to a "visibly intoxicated" person who *has* reached the point at which further consumption is involuntary because the person has lost the sense of reason and volition. That is so because a server continues to have a legal duty not to serve alcohol to visibly intoxicated patrons or guests, and, at the time that ORS 471.565(1) was enacted, a person whose consumption of alcohol can be said to be involuntary did have an existing common-law negligence claim against the server who provided the alcohol, for injuries sustained as a result of the person's intoxication. For that reason, if ORS 471.565(1)

were to be applied to preclude a cause of action in negligence on behalf of an injured, intoxicated patron or guest in such a situation, it would fall into the first category that the court in *Horton* identified—encompassing statutes that deny a remedy to a person injured as a result of a breach of an existing common-law duty—and it would violate Article I, section 10, of the Oregon Constitution.

It is a maxim of statutory construction that, when a statute is capable of more than one plausible interpretation, the court will avoid an interpretation that raises a constitutional problem. *State v. Stoneman*, 323 Or 536, 540 n 5, 920 P2d 535 (1996). We therefore hold that, for purposes of ORS 471.565(1), when a person has lost the "sense of reason and volition," the person does not "voluntarily consume[] alcoholic beverages." So interpreted, the statute is constitutional.

## III.  CONCLUSION

For the foregoing reasons, we conclude that ORS 471.565(1) does not deny a remedy in violation of Article I, section 10, of the Oregon Constitution, to a plaintiff who has voluntarily consumed alcohol, for injuries sustained by the plaintiff resulting from the plaintiff's intoxication, even if the plaintiff was visibly intoxicated when served the alcohol, so long as the server did not provide alcohol to the plaintiff after the point at which the plaintiff had lost the sense of reason and volition and the plaintiff's consumption of alcohol can no longer be said to be voluntary.

The certified question is answered.